1  Daniel A. Crawford (187807)
   CRAWFORD LAW GROUP
2  15303 Ventura Blvd., 9th Floor
   Sherman Oaks, California 91403
3  Tel: (818) 935-6568
4  dac@crawfordlawgroup.com

5  Attorneys for Plaintiffs Daniel Marcus, M.D.,
   Nancy Way, M.D. and Jeannette Martello,
6  M.D.

7

8

9          **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  **DANIEL MARCUS, M.D., NANCY**          Case No.:
    **WAY, M.D. AND JEANNETTE**             Honorable
13  **MARTELLO, M.D.,** INDIVIDUALS
    AND ON BEHALF OF OTHER
14  CALIFORNIA PHYSICIANS AND               **VERIFIED COMPLAINT FOR**
    SURGEONS                                **TEMPORARY AND PERMANENT**
15                                          **INJUNCTIVE RELIEF AND**
                          Plaintiffs,       **DECLARATORY JUDGMENT**
16

17          v.

18  **SHELLEY ROUILLARD,** IN HER
    OFFICIAL CAPACITY AS
19  DIRECTOR OF THE DEPARTMENT
    OF MANAGED HEALTH CARE
20
    and
21
    **KIMBERLY KIRCHMEYER,** IN
22  HER OFFICIAL CAPACITY AS
    DIRECTOR OF THE MEDICAL
23  BOARD OF CALIFORNIA

24                        Defendants.

25

26

27

28
                                    1

**VERIFIED COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT**

## I.    PRELIMINARY STATEMENT

1.    The 2010 Federal Affordable Care Act and its Regulations ("ACA") legalize balance billing by out-of-network physicians nationwide.  An out-of-network provider is a provider that does not have a contract with the insurance company and is therefore not held to the insurance company's contractual rates.

2.    The Affordable Care Act Regulations mandate that emergency services must be covered in a way that is consistent with the ACA.  In fact, the ACA and its Regulations make clear that balance billing is legal even for the provision of emergency life-saving medical and surgical services by emergency room doctors and other specialists.  The ACA and its Regulations remain the governing law to this day.

3.    Balance billing occurs when a physician bills a patient the balance of what the insurance company has not paid for medical services rendered.

4.    In 2008, the California Department of Managed Health Care ("DMHC") promulgated agency regulation Section 1300.71.39 that prohibits balance billing by emergency room physicians, hospital-based physicians and on-call specialists.  In 2009, the *Prospect* Court found that this balance billing prohibition applied solely

to emergency room doctors.  *Prospect Medical Group, Inc. v. Northridge Emergency Group et al.,* 45 Cal.4th 497 (2009).  Together, these laws will be referred to as "California's balance billing prohibition."

5.     Ignoring direction from the California Supreme Court, Defendants have illegally applied California's balance billing prohibition to any doctor who provides any services whatsoever to an emergency room patient.  Defendants have even applied this prohibition to a cosmetic plastic surgeon who provides cosmetic plastic surgery services to emergency room patients.

6.      Defendants are enforcing California's balance billing prohibition which conflicts directly with Federal law, the ACA and its Regulations which legalize balance billing by out-of-network providers.

7.     Plaintiffs seek to enjoin Defendants Shelley Rouillard and Kimberly Kirchmeyer, and all other persons acting on behalf of the California Department of Managed Health Care ("DMHC") and the Medical Board of California, from enforcing California's balance billing prohibition.

8.     Defendants are enforcing California's balance billing prohibition even though Defendant DMHC, the state of California and its other agencies received in excess of $1,836,660,995 in Federal ACA funds after giving assurances that it would comply with the Federal ACA and its Regulations.

VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

9.    In exchange for Federal ACA funds, Defendant DMHC and the state of California gave assurances that these entities would comply with the Federal Affordable Care Act and "all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program."

10.    The requested injunction would protect Plaintiffs Dr. Daniel Marcus, Dr. Nancy Way and Dr. Jeannette Martello, and other California physicians, from Defendants' illegal enforcement of California's balance billing prohibition.

11.    Defendants' violation of Federal law is ongoing and continuous.

12.    The DMHC issued a Cease and Desist Order against Dr. Jeannette Martello, an out-of-network provider and board certified plastic surgeon, and hand fellowship trained hand surgeon.  Dr. Martello is a Hispanic female.

13.    During the Court trial against Dr. Martello, a DMHC attorney incorrectly informed the Los Angeles Superior Court Judge that the Federal Affordable Care Act had nothing to do with the subject of balance billing.

14.    Dr. Jeannette Martello discovered that the above representations to the court were false and erroneous after civil penalties of $ 562,500 were issued against her. These fines were issued based on Dr. Martello's balance billing in violation of California's balance billing prohibition, even though the Federal Affordable Care Act codifies that balance billing by out-of-network providers is legal.

15.    Plaintiff Dr. Jeannette Martello continues to be injured and will be injured in the future.  The fines imposed against her have now risen to nearly $3,924,962 (or

4

such lesser amount as may be proven) since the interest on the fine continues to accrue at a daily rate of about $1,541 (or such lesser amount as may be proven).

16.    Therefore, as long as Defendant DMHC maintains that Plaintiff owes this exorbitant fine and the interest accrues daily, Defendant DMHC continues to violate Federal law on an ongoing basis.  Also, Plaintiff Dr. Jeannette Martello continues to be injured and will be injured in the future.

17.    Defendant DMHC's violation of Federal law is ongoing and continuous, and Plaintiff Dr. Martello continues to be injured and will be injured in the future, since the DMHC maintains a current lien on any real property Dr. Martello has or may acquire in the future.

18.    Defendant DMHC continues to violate Federal law on an ongoing basis since the Cease and Desist Order and $562,500 judgment against Dr. Jeannette Martello for balance billing will remain on the DMHC's website forever, thus destroying her reputation and goodwill forever.

19.    Defendant DMHC continues to violate Federal law on an ongoing basis by enforcing a permanent injunction against Dr. Jeannette Martello which forever enjoins her from balance billing any patients that she sees and treats in any emergency room.  Plaintiff Dr. Jeannette Martello continues to be injured and will be injured in the future.

20.    Defendant Medical Board of California continues to violate Federal law on an ongoing basis by restricting Dr. Jeannette Martello's medical license and placing

5

it on probation for over six years. Her medical license remains on probation as of the date of the filing of this complaint. The fact that her medical license is restricted continues to adversely affect Dr. Jeannette Martello's ability to practice medicine in California and nationwide. Plaintiff Dr. Jeannette Martello continues to be injured and will be injured in the future.

21.    Defendant Medical Board of California continues to violate Federal law on an ongoing basis since the Accusation against Dr. Jeannette Martello and her medical license probation for balance billing will remain on the Medical Board of California's website forever, thus destroying her reputation and goodwill forever.

22.    Plaintiff Dr. Jeannette Martello continues to be injured and will be injured in the future because Defendants required that she dismiss lawsuits that she legally initiated. These case dismissals have placed the label of vexatious litigant on Dr. Jeannette Martello which presently and in the future prohibits her fundamental right of access to the Courts.

23.    Defendant DMHC continues to violate Federal law on an ongoing basis by enforcing a Cease and Desist Order unto Plaintiff Dr. Daniel Marcus which forever enjoins him from balance billing any patients that he treats. Plaintiff Dr. Daniel Marcus continues to be injured and will be injured in the future.

24.    Defendant DMHC issued a cease and desist order unto Daniel Marcus, M.D., an out-of-network board certified general surgeon which is a present injury-in-fact and is currently in force and effect. The DMHC's Cease and Desist Order

6

documents that "This Order shall be effective immediately and shall continue in full force and effect until further Order by the Director."  There has been no further Order from the Director of the DMHC.

25.     In its Cease and Desist Order, the DMHC alleged that Dr. Marcus' balance billing was "unlawful under the Knox-Keene Act as set forth in *Prospect.*"

26.     The DMHC reserved the right to punish Dr. Marcus further in the future.  In the DMHC Cease and Desist Order against Dr. Marcus, "The Department reserves its right to amend this Order to include additional information, including but not limited to, an Accusation, Order, or other request for relief, including but not limited to reimbursement to past, present and future enrollees of health care service plans who have been illegally balance billed for emergency services; or for penalties incurred arising out of the aforementioned findings."

27.     Dr. Marcus' Cease and Desist Order is publicized on the California Department of Managed Health Care's website under the section on Enforcement Actions.

28.     Defendant DMHC continues to violate Federal law on an ongoing basis since the Cease and Desist Order issued against Dr. Daniel Marcus for balance billing will remain on the DMHC's website in perpetuity, thus adversely affecting his reputation and goodwill forever.

29.     Defendant DMHC continues to violate Federal law on an ongoing basis by enforcing a Cease and Desist Order unto Plaintiff Dr. Nancy Way, an out-of-

7

network general surgeon, which forever enjoins her from balance billing any patients that she sees and treats.  Plaintiff Dr. Nancy Way continues to be injured and will be injured in the future.

30.    The DMHC's Cease and Desist Order against Dr. Nancy Way documents that "This Order shall be effective immediately and shall continue in full force and effect until further Order by the Director."  There has been no further Order from the Director of the DMHC.

31.    In its Cease and Desist Order, the DMHC found that Dr. Way's balance billing of a single patient was "unlawful under the Knox-Keene Act as set forth in *Prospect.*"

32.    The DMHC further ordered that Dr. Way shall "CEASE AND DESIST from holding, maintaining, or keeping any and all payments, sums or monies, previously collected from health care service plan enrollees (including, but not limited to, Jane Doe #1 or her parents), beyond any amounts paid by the respective enrollee's health care services plan, for emergency medical services (i.e., services rendered to emergency department patients, including but not limited to emergency appendectomies), other than a co-payment, co-insurance amount or deductible."

33.    The DMHC ordered Dr. Way to "return all payments received from Jane Doe #1 in excess of the amount determined and paid by Blue Cross of California as the reasonable and customary amounts for the services rendered to Jane Doe #1 in this matter."

34.   The DMHC reserved the right to punish Dr. Way further in the future.  In the DMHC Cease and Desist Order against Dr. Way, "The Department reserves its right to amend this Order to include additional information, including but not limited to, an Accusation, Order, or other request for relief, including but not limited to reimbursement to past, present and future enrollees of health care service plans who have been illegally balance billed for emergency services; or for penalties incurred arising out of the aforementioned findings."

35.   Dr. Way's Cease and Desist Order is publicized on the California Department of Managed Health Care's website under the section on Enforcement Actions.

36.   Defendant DMHC continues to violate Federal law on an ongoing basis since the Cease and Desist Order issued against Dr. Nancy Way for balance billing will remain on the DMHC's website forever, thus adversely affecting her reputation and goodwill forever.

37.   The DMHC demanded that Dr. Way refund the amount that she balance billed a single patient.  Even though the sole patient was fully refunded all of the money, the DMHC still sued Dr. Way for over $2,692,500 in The Superior Court of Orange County in 30-2018-01009872-CU-MC-CJC in THE PEOPLE OF THE STATE OF CALIFORNIA, BY AND THROUGH THEIR REPRESENTATIVE, MICHELLE ROUILLARD, DIRECTOR OF THE CALIFORNIA DEPARTMENT

9

1   OF MANAGED HEALTH CARE VS. NANCY B. WAY.  Defendant DMHC is

2   suing Dr. Way for $2,692,500.[1]  As each day passes, the DMHC threatened that its

3   fine against Dr. Way would increase by $ 2500 per day.

4
5   38.     Dr. Way was pressured into signing a settlement agreement which she does

6   not agree with.  In this settlement agreement, she was forced to acknowledge that

7   balance billing in California is illegal and that she was guilty of illegally balance

8   billing.  Under duress, Dr. Way paid a fine of $ 13,000 to the DMHC and pay

9
10  interest of $1587.95 to the patient's family.

11  39.     Defendant DMHC continues to violate Federal law on an ongoing basis since

12
13  Dr. Nancy Way is a Hispanic female physician who is the only other physician in

14  the state of California to be sued by the DMHC for balance billing.

15  40.     To date, two Hispanic female physicians, Dr. Nancy Way and Dr. Jeannette

16
17  Martello, are the only two physicians in the state of California that the DMHC has

18  chosen to sue for balance billing.  This is the case even though the DMHC has

19
20  publicized that there have been over 1.76 million cases of balance billing over a two

21  year period of time.   Defendant DMHC has violated Federal law by violating

22  Plaintiff Dr. Way and Dr. Martello's Equal Protection rights.

23
24  41.     Defendant Medical Board of California ("MBOC") has prosecuted only one

25  physician in the state of California for the unprofessional conduct of balance

26

27  _____
    [1] The damages sued for are based on a daily fine of $ 2500 per day from August 3, 2016
28  until present day.

billing.  That physician is Dr. Jeannette Martello, a Hispanic female physician, who was singled out by Defendant MBOC for its "case of first impression" for balance billing prosecution.

42.     Defendant DMHC has violated the Federal grant applications governed by Federal law which required that Dr. Way's and Dr. Martello's Equal Protection rights be respected.

43.     In these Federal Affordable Care Act grant applications, the DMHC and the state of California gave assurances to "comply with all Federal statutes relating to nondiscrimination. These include but are not limited to: (a) Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin; (b) Title IX of the Education Amendments of 1972, as amended (20 U.S.C.§§1681-1683, and 1685-1686), which prohibits discrimination on the basis of sex."

44.     Plaintiffs and thousands of California physicians are concurrently obligated to comply with Federal mandate of The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 131 (2010), and implementing regulations ("ACA"). There is no "opt out" under the ACA for Plaintiffs and California physicians.

45.     Plaintiffs have no choice but to file this suit for their protection and for the protection of other California physicians.

46.     Plaintiffs and other California physicians strive to comply with *all* applicable laws, but they face the untenable situation of being required to comply with an

11

agency regulation that conflicts with the Federal ACA. That conflict between state and Federal law, if left unresolved, will among other things, causes continued confusion for not only Plaintiffs and all California physicians, but also for insureds, employers, and Federal and state regulators of employers and insurance companies in California.

47.    Respectfully, Plaintiffs submit that, by virtue of such conflict, Federal law prevails in accordance with the United States Constitution. Plaintiffs thus petition this Court for injunctive and declaratory relief.

48.    Importantly, Plaintiffs espouse no opinion on the policy rationales behind the ACA or the conflicting California law. Congress enacted the ACA. Plaintiffs and other California physicians would comply with both laws if they could.

49.    However, by virtue of the current enforcement actions taken by the DMHC and the MBOC against Plaintiffs and against other California physicians, Defendants have placed Plaintiffs and other California physicians in an impossible position:  they must comply with a conflicting state law to continue to practice medicine in California or face very serious penalties for not doing so.

50.    By complying with California's balance billing prohibition, Plaintiffs risk exposure under Federal law (which has its own potential penalties and legal risks to Plaintiffs and to other California physicians).

51.    Immediate relief from this Court is both necessary and appropriate.

/ / /

12

## II.    PARTIES, JURISDICTION AND VENUE

### A.  PARTIES:  PLAINTIFFS

52.    Plaintiffs Dr. Daniel Marcus, Dr. Nancy Way and Dr. Jeannette Martello are practicing physicians in the state of California.  They represent their interests and the interests of other California physicians.

53.    Plaintiffs have standing in their own right to bring this action because they are suffering from immediate and threatened injury from Defendants' ongoing and continuous enforcement actions against them.

54.    Plaintiffs have standing to represent other similarly situated California physicians who continue to have California's conflicting balance billing prohibition enforced unto them.

55.    Plaintiffs have standing to challenge the lawfulness of California's conflicting balance billing prohibition because, among other things: (a) the interests Plaintiffs seek to vindicate in this action are germane to the interests of other California physicians and (b) other California physicians would have standing in their own right to bring this action because, among other things other California physicians are suffering immediate or threatened injury from Defendants' actions in enforcing California's balance billing prohibition which conflicts with Federal law. Direct participation by other California physicians is not necessary to resolve the pure questions of law raised in this suit.

13

56.    The immediate and threatened injuries to Plaintiffs and California physicians are directly traceable to Defendants' ongoing and continuous violation of Federal law through their ongoing and continuous enforcement of California's balance billing prohibition that directly conflicts with Federal law.

### B.  PARTIES:  DEFENDANTS

57.     Ms. Shelley Rouillard ("Rouillard") is the duly appointed Director of the DMHC, whose duties include the supervision, regulation and discipline of certain health plans licensed through the agency and health care providers throughout the entire state of California.

58.    Defendant Rouillard has a direct connection with the enforcement of the California's conflicting balance billing prohibition.

59.    Defendant Rouillard is sued in her official capacity because she is the state official with the ultimate responsibility for administering and enforcing the provisions of California's conflicting balance billing prohibition.  The relief requested in this action is sought against Defendant Rouillard, as well as any subordinates, officers, employees, agents, and other persons acting in cooperation with her, under her supervision, or under the control of her or the DMHC, or anyone acting in concert or participation with the foregoing.

60.     Ms. Kimberly Kirchmeyer ("Kirchmeyer") is the duly appointed Director of the MBOC, whose duties include the supervision, regulation and discipline of physicians throughout the entire state of California.

14

61.    Defendant Kirchmeyer has a direct connection with the enforcement of California's conflicting balance billing prohibition.

62.    Defendant Kirchmeyer is sued in her official capacity because she is the state official with ultimate responsibility for administering and enforcing the provisions of the Medical Practice Act.

63.    Defendant MBOC continues to enforce violations of California's conflicting balance billing prohibition as purportedly unprofessional conduct deserving of severe physician discipline.

64.    The relief requested in this action is sought against Defendant Kirchmeyer, as well as any subordinates, officers, employees, agents, and other persons acting in cooperation with her, under her supervision, or under the control of her or the MBOC, or anyone acting in concert or participation with the foregoing.

## C.  JURISDICTION

65.    This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1331, because the case raises Federal questions and involves Federal laws, including, but not limited to, the Federal Affordable Care Act and The Employee Retirement Income Security Act of 1974 as amended ("ERISA") and 29 U.S.C. §§1001.  *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96 n.14 (1983).  54.

66.    Plaintiffs and other California physicians seek a declaration of their rights in this case of actual controversy which are within the Court's jurisdiction pursuant to 28 U.S.C. §§2201 to 2202.

15

## D.  VENUE

67.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because among other things:  a substantial part of the events or omissions giving rise to the claims occurred in this District.  Plaintiffs and other California physicians practice medicine and conduct business in this District.  As such, Defendants' ongoing and continuous actual and threatened enforcement actions impact Plaintiffs' and other California physicians' practice of medicine and business activity in this District.  Further, the effects of any future DMHC or MBOC enforcement actions, if allowed to proceed, will affect thousands of California physicians in this District.

## THE FEDERAL QUESTION

68.    The Federal balance billing health care reform provisions mandated in the Federal Affordable Care Act preempt and conflict with California's balance billing prohibition.  Plaintiffs and other California physicians cannot simultaneously comply with the Federal balance billing health care reform provisions mandated under the ACA and its Regulations, and with California's conflicting balance billing prohibition.

69.    California's conflicting balance billing prohibition *prevents* the application of provisions of The Affordable Care Act and its Regulations.  According to the ACA, emergency services must be covered "in a way that is ***consistent*** with these interim final regulations . . . it is ***necessary*** that a reasonable amount be paid ***before a***

*patient becomes responsible for a balance billing amount*." [emphasis added] (45 CFR Parts 144, 146 and 147, Federal Register, Volume 75, No. 123, page 37194, June 28, 2010).  In order to be consistent with what is required by the ACA, balance billing by out-of-network emergency service providers is part of the detailed scheme.  Balance billing is an intimate part of the detailed emergency services provisions of The Federal Regulations.

70.     Defendants might argue that health care providers do not *need* to balance bill patients in order to be in compliance with both the Federal ACA and with a conflicting California regulation.  The United States Supreme Court declared that inaction is not required to turn an ***impossibility*** into a ***possibility***.  *Mutual Pharmaceutical, Inc. v. Bartlett*, 570 U.S. ___ (2013) [emphasis added]  The *Bartlett* Court opined that inaction "is incompatible with this Court's pre-emption cases, which have presumed that ***an actor seeking to satisfy both federal- and state-law obligations is not required to cease acting altogether in order to avoid liability***.  Indeed, if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be "all but meaningless" (*Bartlett supra* at 14 to 16) and "would render impossibility pre-emption a dead letter and work a revolution in this Court's pre-emption case law." *Bartlett supra* at 2.   The Highest Court recognized that an inaction "rationale would mean that not only *PLIVA*, but also the vast majority - - if not all - - of the cases in which the Court has found impossibility pre-emption, were wrongly decided."  Footnote 5, *Bartlett supra* at

71.     "The mere fact that a manufacturer may avoid liability by leaving the market does not defeat a claim of impossibility."  The *Bartlett* Court noted that "[I]n every instance in which the Court has found impossibility pre-emption, the 'direct conflict' between federal- and state-law duties could easily have been avoided if the regulated actor had simply ceased acting."  *Bartlett supra* at 15.

72.     Several United States Supreme Court cases have found that Federal minimum standards preempt stricter state laws.  The States may adopt more stringent safety requirements "when necessary to eliminate or reduce an essentially local safety hazard" if those standards are ***"not incompatible with" federal laws or regulations and not an undue burden on interstate commerce."***  [emphasis added].  *CSX Transp., Inc., v. Easterwood,* 507 U.S. 658, 664 (1993)*; Geier v. American Honda Motor Co.,* 529 U.S. 861 (2000).  The *Pliva* Court found in favor of defendants who were held to a Federal "duty of sameness" that was in conflict with a more stringent state law.  *Pliva, Inc., et al., v. Mensing*, 564 U.S. ____ (2011).  The *Pliva* Court found that it was ***impossible*** for the defendants to comply with the Federal duty of sameness at the same time as complying with the stricter state law.  *Pliva supra* at 9.

73.     In the case at hand, it is impossible for Plaintiffs and other California physicians to comply with The Federal Affordable Care Act's duty of uniformity at the same time as complying with the stricter California balance billing ban regulation.

18

74.     California's balance billing ban regulation and its enforcement are obstacles "to the accomplishment and execution of important means-related federal objectives" of Congress and they are therefore pre-empted. *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)*; Int'l Paper Co. v. Ouellette,* 479 U.S. 481 (1987)*; Fidelity Fed. S. & L. v. De La Cuesta,* 458 U.S. 141, 156 (1982)*; Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142 (1963). " *English v. General Electric Co.,* 496 U.S. 72, 79 (1990). Congress fully voiced its objectives in The Affordable Care Act, "Congress' intent to provide ***uniform minimum protections to consumers in every State.***" (45 CFR Parts 144, 146 and 147, Federal Register, Vol. 75, No. 123, page 37222, June 28, 2010*).* The California balance billing ban does not ensure uniformity amongst the states and therefore it impedes Congress' objectives.

75.     In the Affordable Care Act, Congress mandates a Federal ***duty of uniformity*** amongst the states in the provision of health care services and health insurance. In The Affordable Care Act's Federal Regulations, Congress voices its objectives to subject the industry to a ***single, uniform set of Federal standards.*** According to the express preemption provision, if any state regulatory authority prevents the application of the provisions of The Federal Affordable Care Act, the state law or regulations are preempted. Section 1321(d) of The Affordable Care Act.

76.     Congress mandated uniformity so as to "avoid the conflict, uncertainty, cost, and occasional risk to safety itself that too many different safety-standard cooks might otherwise create." Congress intended a uniformity of standards so that the

19

public as well as the health care industry would be "guided by one set of criteria rather than by a multiplicity of diverse standards." *Geier supra* at 871*; Wissner v. Wissner,* 338 U.S. 655, 658 (1950)*; Ouellette supra* at 496. The United States Supreme Court has declared, "[W]e are convinced that if affected States were allowed to impose separate" standards, "the inevitable result would be a serious interference with the achievement of the "full purposes and objectives of Congress." *Ouellette supra* at 493. The adverse impact of conflicting state law actions "on the federal interest in uniformity" has been reviewed in many United States Supreme Court cases and Congress' intent to avoid, "diverse, nonuniform" regulations has been stressed throughout these cases. *Cipollone v. Liggett Group,* 505 U.S. 504, 517 and 519 (1992).

77.    A lack of uniformity between the states with respect to how emergency services are paid for would unreasonably, arbitrarily and unduly burden interstate commerce. Congress has made known its intent and objectives of uniformity amongst the states. To allow California to have a balance billing ban would "materially affect interstate commerce where uniformity is necessary." *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 442 (1960). Furthermore, one can imagine situations in which patients would travel greater distances to arrive in a state with balance billing bans. The travel time would lead to delays in medical evaluation and treatment that could be disastrous and lead to increased morbidities and mortalities nationwide.

20

78.    Unduly and unreasonably burdened interstate commerce was discussed in the

case of non-uniform mud flaps.  Illinois made it illegal to have a straight mud flap

which was legal in at least 45 other states.   The state statute was declared violative

of the Commerce Clause. *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 529

(1959).  The Highest Court held that "the total effect of the law as a safety measure

is so slight or problematical as not to outweigh the national interest in keeping

interstate commerce free from interferences which seriously impede it." *Bibb supra*

at 524, 526*; Sproles v. Binford,* 286 U.S. 374 (1932)*, South Carolina Highway*

*Dept. v. Barnwell Bros.,* 303 U.S. 177 (1938); *Maurer v. Hamilton,* 309 U.S. 598

(1940).  If a non-uniform, balance billing ban by California is allowed to co-exist

with The Federal Affordable Care Act, "some element of discrimination against

interstate commerce" will exist. *Bibb supra* at 529.

79.    Federal funding is "necessary to trigger" Federal preemption of state law.

*Norfolk S. Ry Co. v. Shanklin* 529 U.S. 344, 361 (2000); *CSX Transp., Inc.v.*

*Easterwood,* 507 U.S. 658 (1993).  Under penalty of the False Claims Act,

California agreed to abide by all provisions (including those of balance billing as a

method of implementing Federal health care reform) of the ACA in exchange for

Federal ACA funds which now total over $1,836,660,995.

80.    California's establishment grant application was submitted on August 31,

2010 and the DMHC applied for Federal ACA funds in July 2010, months before

the DMHC issued a Cease and Desist against Plaintiff Dr. Jeannette Martello for

allegations of balance billing.  Each grant application included signed assurances

under the False Claims Act by which California state officials agreed to "comply

with all applicable requirements of all other Federal laws executive orders,

regulations, and policies governing this program."  Fully informed, California

authorities noted that they were "aware that any false, fictitious, or fraudulent

statements or claims may subject them to criminal, civil or administrative penalties.

(U.S. Code, Title 218, Section 1001)."

81.    Under the Supremacy Clause of the United States Constitution, a state law

conflicting with a Federal law must yield to the Federal law.  Because California's

regulation against balance billing conflicts with the balance billing Federal health

care reform provisions mandated under the ACA, California's regulation against

balance billing is null, void, invalid, and unenforceable.

82.    California's regulation against balance billing is also preempted by the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, with

respect to self-insured employee welfare benefit plans.

83.    The Defendants' ongoing and continuous enforcement actions force Plaintiffs

and other California physicians to comply with an unenforceable regulation.

Plaintiffs and other California physicians cannot be forced to comply with an

unenforceable regulation and balance billing prohibition.

84.    Plaintiffs and other California physicians are entitled to a Declaratory

Judgment that California's regulation against balance billing is preempted by

Federal law and unenforceable under the Supremacy Clause of the U.S.
Constitution.

85.     Defendants' enforcement actions breach every grant application contract and every assurance given to the Federal government for Federal ACA funding which California received which now exceeds $1,836,660,995.

86.     Plaintiffs are further entitled to injunctive relief prohibiting Defendants, and any officers, agents, servants, employees, attorneys, and anyone acting in active concert or participating with the foregoing, from enforcing or giving effect, or attempting to enforce or give effect, to California's regulation against balance billing.

87.     Plaintiffs are likely to succeed on the merits because compliance with both Federal and state regulations is impossible, and the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in the Affordable Care Act. The obligations imposed on Plaintiffs and other California physicians by the Affordable Care Act and California's law against balance billing are irreconcilable.  Further, Congress expressly provided that the coverage mandates in Affordable Care Act shall preempt contrary state laws. California's law against balance billing is a contrary state law.

88.     The immediate and irreparable real threat of harm to Plaintiffs and to other California physicians will result if a restraining Order does not issue.

89.     Defendants have taken enforcement actions to compel Plaintiffs and other California physicians to comply with a state regulation that conflicts with Federal law, effectively ordering Plaintiffs to violate Federal law, and thereby exposing Plaintiffs and other California physicians to liability for failure to comply with Federal law.

90.     Defendants' actions, among other things, also jeopardize Plaintiffs' reputation and goodwill with their patients and the public.

91.     Defendant DMHC continues to violate Federal law on an ongoing basis by enforcing California's balance billing prohibition against other physicians and medical groups, including, but not limited to San Francisco General Hospital Medical Group, Scripps Mercy Hospital physicians, PRIME, INC. physicians, Emergency Services Medical Corporation, the Chase Dennis Emergency Medical Group, Inc., North Coast Pathology, Flower Valley Emergency Physicians and Southwest Trauma Medical Associates.

92.     Since this is a Federal question claim, the harm to Defendants is not relevant to the analysis of whether an injunction or restraining order is proper. Nevertheless, the issuance of the requested injunctive relief would not cause Defendants any harm. California's regulations prohibiting balance billing is in conflict with Federal law, and Defendants have no right to enforce it in the first place. There is no conceivable harm to Defendants by merely preventing Defendants from temporarily suspending their enforcement of an unconstitutional regulation. Even in the

24

unlikely event that the Court ultimately concludes that the California agency regulation is not preempted by the ACA or ERISA, Defendants may simply proceed with enforcement at that time.

93.    The DMHC and the MBOC did not enforce California's regulation that prohibits balance billing until after it received millions of dollars in Federal funds to implement The Affordable Care Act in the state of California.

94.    Since this is a Federal question claim, the public interest also is not relevant to the analysis of whether an injunction or restraining order is proper. Nevertheless, the public interest favors Plaintiff and other California physicians because it is in the public interest that state officials not enforce unconstitutional regulations, particularly where said enforcement would remove critical Federal health care reform balance billing provisions mandated by Congress in the ACA.  The public also has an interest in receiving rights guaranteed by Federal law and a receiving immediate clarity on this issue.

95.    Furthermore, the public is harmed by enforcement of an unconstitutional state regulation because the interest in preserving Constitutional guarantees is paramount.

96.    Plaintiffs and other similarly situated California physicians and medical groups of physicians have no adequate remedy at law.

**DEFENDANTS' ENFORCEMENT ACTIONS
ENSUED AFTER CALIFORNIA'S RECEIPT OF MILLIONS
IN FEDERAL AFFORDABLE CARE ACT FUNDS**

97.    On March 23, 2010, President Obama signed into law the Patient Protection and Affordable Care Act and on March 30, 2010, President Obama signed the Health Care and Education Reconciliation Act, collectively referred to as the Affordable Care Act ("ACA").

98.    On June 28, 2010, the Interim Final Rules of The Federal Affordable Care Act were published in the Federal Register.  These Regulations mandated balance billing as a method to implement Federal health care reform.  These ACA Regulations became effective on August 27, 2010.

99.    On July 7, 2010, the California Department of Managed Health Care and California Department of Insurance jointly submitted an application on behalf of the state for $ 1 million in Federal Affordable Care Act funding.  Each grant application included signed assurances by which California agreed to "comply with all applicable requirements of all other Federal laws executive orders, regulations, and policies governing this program."  Fully informed, California authorities noted that they were "aware that any false, fictitious, or fraudulent statements or claims may subject them to criminal, civil or administrative penalties. (U.S. Code, Title 218, Section 1001)."

VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

100.   On August 9, 2010, the DMHC received $ 608,000 of a $ 1 million Federal

Affordable Care Act grant it applied for with the California Department of

Insurance.

101.   On August 31, 2010, California applied for the first of several Federal

Affordable Care Act grants.  Since then, over $1,836,660,995 in Federal funding

has been awarded to the state of California to implement the Federal Affordable

Care Act.  Each grant application included signed assurances by which California

agreed to "comply with all applicable requirements of all other Federal laws

executive orders, regulations, and policies governing this program."  Fully

informed, California authorities noted that they were "aware that any false,

fictitious, or fraudulent statements or claims may subject them to criminal, civil or

administrative penalties. (U.S. Code, Title 218, Section 1001)."

102.   According to the California Assembly Budget Subcommittee No. 1 Health

and Human Services, the DMHC received Federal Affordable Care Act funding for

the "federal Consumer Assistance Program Grant of $4.2 million originally

awarded in 2010" and "expended $3.9 million of this grant in 2011-12."

## DEFENDANT DMHC RECOGNIZED FEDERAL PREEMPTION OF CALIFORNIA'S CONFLICTING BALANCE BILLING PROHIBITION

103.   On August 27, 2010, Lucinda Ehnes, Director of the California Department

of Managed Health Care wrote to Jay Angoff of the Office of Consumer

27

Information and Insurance Oversight of the U.S. Department of Health and Human Services voicing concerns over The Affordable Care Act's preemption of California's balance billing ban.

104. On September 21, 2010, Timothy LeBas of the DMHC wrote to Jay Angoff of the Office of Consumer Information and Insurance Oversight of the U.S. Department of Health and Human Services recognizing The Affordable Care Act's preemption of California's law prohibiting balance billing.

105. On October 18, 2010, the DMHC was publicly announced as member of the Governor's Health Care Reform Implementation Task Force for implementation of the Federal Affordable Care Act in California.

106. On October 21, 2011, Brent Barnhart, Director of the DMHC wrote to Dr. Donald Berwick of the Center for Medicare and Medicaid Services of the Department of Health and Human Services acknowledging Federal preemption of California law and balance billing ban. This letter was written with the California Health Benefit Exchange and the California Department of Insurance.

107. In the October 21, 2011 letter directed to Dr. Berwick of the Center for Medicare and Medicaid Services of the Department of Health and Human Services, California Health Benefit Exchange Executive Director Peter Lee acknowledged that the Federal Affordable Care Act provided for balance billing.

28

108.   On November 17, 2011, Brent Barnhart, Director of the DMHC noted that California law was in conflict with the Federal Affordable Care Act regulations.

## CLAIMS FOR RELIEF

## COUNT I –VIOLATION OF FEDERAL LAW

109.   Plaintiffs incorporate by reference Paragraphs 1 through 108 of the Verified Complaint as if fully stated herein.

110.   In sum, this dispute arises because Plaintiffs and California physicians have been placed in a situation where they are required to comply with conflicting Federal law and with a conflicting state regulation, which requirements are irreconcilable.

111.   Judicial intervention, through a Declaratory Judgment, is required to provide relief for Plaintiffs and California physicians, from this conflict, and clarity as to which law (state or Federal) governs for the collective benefit of Plaintiff and California physicians, as well as all insureds, other insurance companies, employers and regulators (both state and Federal) regulating the same in California.

112.   The Supremacy Clause of the United States Constitution provides that Federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const, art. VI, cl. 2.  Thus, state law that conflicts with Federal law has no effect, and cannot be enforced.

113.   The Federal ACA, as codified, provides that the states are not allowed to enact or enforce laws which prevent application of the requirements of the ACA.

114.   The conflicting requirements of California's balance billing ban prohibition, taken in whole or in part and as enforced by Defendants, conflict with the ACA (and its implementing Regulations); disregard Federal policies; interfere with Federal enforcement of the ACA; prevent the application of the ACA and its requirements, and otherwise impede the accomplishment and execution of the full purposes and objectives of Federal law.

115.   Plaintiffs and other California physicians cannot at the same time comply with both the Federal mandate that requires balance billing as a Federal health care reform method of containing the costs of health care on the one hand, and the prohibition of balance billing in California's regulation, on the other hand.

116.   California's conflicting regulatory requirements are preempted by Federal law.   Under the Supremacy Clause, California's conflicting regulation should be held unconstitutional and therefore invalid.

117.   All provisions of California's balance billing prohibition fall within the preemptive effect of the ACA.

118.   Accordingly, pursuant to 28 U.S.C. § 2201, a Declaration is necessary and appropriate to specify that California's conflicting balance billing prohibition is preempted under, and violates, the Supremacy Clause of the U.S. Constitution.

## **PRAYER FOR RELIEF – COUNT I**

WHEREFORE, Plaintiffs, collectively and on behalf of California physicians respectfully request the following relief:

    (1) a Declaratory Judgment stating that California's conflicting balance billing prohibition is, for the reasons set forth above, preempted and invalid under the Supremacy Clause of the United States (article VI, clause 2)

    (2) an Order awarding Plaintiffs their reasonable attorney fees and costs in this action; and

    (3) any other relief that this Court deems just and proper.

## **REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION -- COUNT II**

119.   Plaintiffs incorporate by reference Paragraphs 1 through 118 of the Verified Complaint as if fully stated herein.

120.   As a direct and proximate cause of the enforcement actions taken above by Defendants, which are currently ongoing and continuous, and in the absence of immediate injunctive relief, Plaintiffs and other California physicians will suffer immediate and irreparable harm, including, but not limited to:

- being compelled to violate the ACA should they continue to be compelled to comply with California's balance billing prohibition;

31

- The ongoing and continuous accrual of $ 1541 in daily interest on a fine of $ 562,500 which has now risen to $3,924,962 imposed upon Plaintiff for violation of California's conflicting balance billing prohibition;

- Plaintiffs and other California physicians are being forced on an ongoing and continuous basis to refund monies legally collected over the years since balance billing was legalized by the 2010 Federal ACA and its Regulations;

- Defendants are forcing Plaintiffs and other California physicians on an ongoing and continuous basis to refrain from balance billing, a right and property interest conferred on them by the 2010 Federal ACA and its Regulations;

- Plaintiffs and other California physicians are having to comply with California's balance billing prohibition that is unconstitutional since it directly conflicts with Federal law, thereby exposing Plaintiffs and other California physicians to penalties and damages under Federal law;

- Plaintiffs and other California physicians continue to suffer damage to their reputation and goodwill on an ongoing basis occasioned by Defendants' enforcement actions, including incurring significant compliance burdens and expenses, and, other harms. These damages are unquantifiable.

- Plaintiffs and other California physicians have no adequate remedy at law for such injuries.

32

- Plaintiffs and other California physicians cannot comply with both Federal law and with California's conflicting balance billing prohibition at the same time.

- There is no adequate legal remedy to rectify being compelled to violate Federal law or to adhere to California's unconstitutional balance billing prohibition.

- To preserve the *status quo*, injunctive relief must be granted as soon as possible as Plaintiffs and other California physicians will continue to suffer unnecessary and irreparable harm if forced to wait for relief through the normal disposition of the issues raised by this matter.

- There is a substantial likelihood that Plaintiffs and other California physicians will prevail on the merits.

- Where, as here, a party is moving for injunctive relief to enjoin the enforcement of a state law on preemption grounds, the balance-of-harm and public-interest factors need not be considered.  Nevertheless, the harm to Plaintiffs and other California physicians outweighs any potential harm to Defendants from the entry of injunctive relief, and the equities favor the granting of injunctive relief by way of preliminary and then permanent injunctive relief.

- In contrast to the substantial harm to Plaintiffs and to other California physicians, Defendants will suffer no prejudice or undue hardship.  No state agency is entitled to enforce a law that conflicts with Federal law. Compliance with Federal law should not impose a burden upon Defendants.

- California and the DMHC have received in excess of $1,836,660,995 in Federal ACA funds for implementation of The Affordable Care Act in California. ACA grant recipients knew that the receipt of Federal ACA funds was dependent on unconditional and complete compliance with the ACA and its Regulations. Grant applicants gave assurances to comply with the ACA and its Regulations to the Federal government as a requirement of grant process and ultimate receive of Federal funds. Grant applicants gave assurances to not discriminate on the basis of race or sex. California and the DMHC have gave false assurances since these requirements have been breached.

- Further, and among other things, insureds, employers and insurers in California (as well as Defendants) need immediate Judicial clarification as to the scope of preemption occasioned by the Affordable Care Act. If such an impermissible conflict exists, and/or continues to exist, the public interest, even if relevant, is best served by immediate resolution of that issue and injunctive relief until such permanent resolution and adjudication can be obtained. Furthermore, the public is harmed by enforcement of an unconstitutional state regulation because the interest in preserving Constitutional guarantees is paramount.

- A Restraining Order and/or, upon proper hearing, a preliminary and permanent injunction are needed to provide an effective remedy for the quagmire faced by Plaintiff and other California physicians as well as all insurers, employers and

34

insureds in the state of California.  A Temporary Restraining Order and/or subsequent preliminary injunction should be entered until a permanent injunction can be entered to maintain the *status quo* and remedy the palpable irreparable harm to Plaintiffs.

## **PRAYER FOR RELIEF – COUNT II**

WHEREFORE, Plaintiffs respectfully request the following relief:

(1) That this Court enter a Temporary Restraining Order against Defendants in their official capacity as Director of the California Department of Managed Health Care and as Director of the Medical Board of California, and any officers, agents, servants, employees, attorneys, and anyone acting in active concert or participating with the foregoing, prohibiting any enforcement of any aspect of California's law against balance billing that is preempted and/or violates the Supremacy Clause of the U.S. Constitution (and is non-severable therefrom); and

(2) That following a preliminary injunction hearing, this Court enter its Order providing the injunctive relief sought herein by Plaintiff; and

(3) After a full and final hearing on the merits of this cause, the Court make permanent its Order providing the injunctive relief sought herein by Plaintiffs; and

35

(4) An Order awarding Plaintiffs their reasonable attorney fees and costs incurred in this action; and

(5) Any other relief that this Court deems just and proper.

Respectfully submitted.

By: _____

DANIEL CRAWFORD
CRAWFORD LAW GROUP
Attorneys for Plaintiffs
DANIEL MARCUS, M.D.,
NANCY WAY, M.D.,
and JEANNETTE MARTELLO, M.D.

VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF