XAVIER BECERRA
Attorney General of California
ROBERT MCKIM BELL
Supervising Deputy Attorney General
CLAUDIA RAMIREZ, State Bar No. 205340
JONATHAN NGUYEN, State Bar No. 263420
Deputy Attorneys General
  California Department of Justice
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Telephone: (213) 269-6482
  Fax: (916) 731-2117
  E-mail: Claudia.Ramirez@doj.ca.gov
          Jonathan.Nguyen@doj.ca.gov
*Attorneys for Defendant Christine J. Lally,*
*Interim Executive Director of the Medical Board of*
*California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MARCUS, M.D., NANCY B. WAY, M.D. and JEANNETTE MARTELLO, M.D., individuals and on behalf of other California Physicians and Surgeons,<br><br>Plaintiffs,<br><br>v.<br><br>SHELLEY ROUILLARD, in her Official Capacity as Director of the Department of Managed Health Care<br><br>and<br><br>CHRISTINE J. LALLY, in her Official Capacity as Interim Executive Director of the Medical Board of California,<br><br>Defendants. | Case No. 2:19-cv-08057-CJC-AGR<br><br>**DEFENDANT CHRISTINE J. LALLY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT [Fed. R. Civ. Proc. § 12(b)]**<br><br>Filed Concurrently with:<br>(1) Notice of Motion;<br>(2) Proposed Order;<br>(3) Request for Judicial Notice<br><br>Date: April 20, 2020<br>Time: 1:30 p.m.<br>Courtroom: 7C<br>Judge: The Hon. Cormac J. Carney<br>Trial Date: None<br>Action Filed: September 17, 2019 |

# TABLE OF CONTENTS

**Page**

Memorandum Of Points And Authorities................................................................1

Introduction ...........................................................................................................1

Background ............................................................................................................2

    I.    The Parties ................................................................................................2

    II.   California's Balancing Billing Prohibition ...............................................3

Standard Of Review ..............................................................................................4

    I.    Federal Rule of Civil Procedure 12(b)(1) ...............................................4

    II.   Federal Rule of Civil Procedure 12(b)(6) ...............................................5

Argument...............................................................................................................5

    I.    Martello's Section 1983 Claims Are Time-Barred .................................5

    II.   Martello's Claim Under The ACA is Time-barred .................................7

    III.   Martello's Claim Under Erisa is Time-barred.........................................7

    IV.   Eleventh Amendment Immunity Bars Plaintiffs' Claims .......................8

    V.    Marcus and Way's Claims are not Justiciable ......................................11

    VI.   Marcus and Way Lack Constitutional Standing....................................12

    VII.  Plaintiffs Lack Prudential Standing to Assert the Rights or Interests of Third Parties ......................................................................13

    VIII. The Rooker-Feldman Doctrine Bars Martello's Claims .......................14

    IX.   The Anti-Injunction Act Bars Martello's Claims.................................16

    X.    Martello's Claims are Moot ..................................................................17

    XI.   Issue Preclusion Bars Martello's Claims .............................................17

           A.   Preclusive Effect of Judgment on Judicial Review of the Board's Administrative Disciplinary Proceeding ....................18

           B.   Preclusive Effect of State Court Order in Petition for Traditional Writ of Mandate and Complaint ..........................21

           C.   Preclusive Effect of Judgment in DMHC Civil Action ...........23

    XII.  Plaintiffs Fail to State Cognizable Claims ..........................................24

           A.   Plaintiffs fail to State a Cognizable Claim Under 42 U.S.C ....................................................................................24

                 1.   Plaintiffs Fail to State a Cognizable Claim Under the First Amendment ...........................................25

                 2.   Plaintiffs Fails to State a Cognizable Claim for Violation of Due Process ...........................................26

           B.   Martello Fails to State a Cognizable Claim under the ACA ......................................................................................28

           C.   Martello Fails to Allege a Cognizable Claim for Denial of Benefits under ERISA Section 502...................................29

i

**TABLE OF CONTENTS**
(continued)

                                                                              Page

D.   Plaintiffs Fail to State a Cognizable Claim Under the
     Supremacy Clause ........................................................................... 31

E.   Plaintiffs Fail to State a Cognizable Claim for Declaratory
     Relief. ............................................................................................... 31

XIII. Plaintiffs' Preemption Theory Fails as a Matter of Law ..................... 32

A.   Initial Presumption as to the ACA ............................................. 32

B.   The ACA does not preempt the Balance Billing
     Prohibition ...................................................................................... 33

C.   ERISA does not Preempt the Balance Billing Prohibition ....... 34

XIV. Plaintiffs Should Not be Granted Leave to Amend ............................ 35

Conclusion ......................................................................................................... 35

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Sav. Bank v. UBS Fin. Servs.*
   347 F.3d 436 (2d Cir. 2003).................................................................................12

*Amluxen v. Regents of University of California*
   53 Cal. App. 3d 27 (1975) ...................................................................................19

*Armstrong v. Exceptional Child Center, Inc.*
   575 U.S. 320 (2015).............................................................................................31

*Armstrong v. Manzo*
   380 U.S. 545 (1965)............................................................................................27

*Arnett v. Dal Cielo*
   14 Cal. 4th 4 (1996) ..............................................................................................3

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)..............................................................................................5

*Babbitt v. United Farm Workers Nat. Union*
   442 U.S. 289 (1979)............................................................................................11

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1990) ................................................................................5

*Barker v. Hull*
   191 Cal. App. 3d 221 (1987) ..............................................................................22

*Bird v. Department of Human Services*
   935 F.3d 738 (9th Cir. 2019) .................................................................................6

*Border Business Park, Inc. v. City of San Diego*
   142 Cal. App. 4th 1538, 1564 (2006) .................................................................23

*Cal. Coastal Comm'n v. Granite Rock Co.*
   480 U.S. 572 (1987).............................................................................................32

*Cal. Pro-Life Council, Inc. v. Getman*
   328 F.3d 1088 (9th Cir. 2003) .......................................................................11, 12

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*

4
    344 F.3d 822 (9th Cir. 2003) ............................................................... 7

5

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*

6
    447 U.S. 557 (1980) .......................................................................... 25

7

*Chapman v. Houston Welfare Rights Organization*
    441 U.S. 600 (1979) .......................................................................... 31

8

9

*City of Erie v. Pap's A.M.*
    529 U.S. 277 (2000) .......................................................................... 17

10

*Coalition to Defend Affirmative Action v. Brown*

11
    674 F.3d 1128 (9th Cir. 2012) ............................................................. 9

12

*Cooper v. Ramos*

13
    704 F.3d 772 (9th Cir. 2012) ............................................................. 15

14

*Cyr v. Reliance Standard Life Ins., Co.*

15
    642 F.3d 1202 (9th Cir. 2011) ........................................................... 30

16

*DeSoto v. Yellow Freight Systems, Inc.*

17
    957 F.2d 655 (9th Cir. 1992) ............................................................. 35

18

*Dhillon v. John Muir Health*

19
    2 Cal. 5th 1109 (2017) ...................................................................... 20

20

*District of Columbia Court of Appeals v. Feldman*
    460 U.S. 462 (1983) .......................................................................... 14

21

*Doe and Associates Law Offices v. Napolitano*

22
    252 F.3d 1026 (9th Cir. 2001) ........................................................... 15

23

*Doe One v. CVS Pharmacy, Inc.*

24
    348 F. Supp. 3d 967 (N.D. Cal. 2018) ............................................... 29

25

*Fink v. Shedler*

26
    192 F.3d 911 (9th Cir. 1999) ........................................................... 5, 6

27

*FMC Corp. v. Holliday*
    498 U.S. 52 (1990) ............................................................................ 34

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Franceschi v. Schwartz*
 57 F.3d 828 (9th Cir.1995) ................................................................8

*Franklin v. Terr*
 201 F.3d 1098 (9th Cir. 2000) .........................................................24

*Golden State Transit Corp. v. City of Los Angeles*
 493 U.S. 103 (1989)..........................................................................31

*Graham v. Conner*
 490 U.S. 386 (1989)..........................................................................24

*Grannis v. Ordean*
 234 U.S. 385 (1914)..........................................................................27

*Guess vs. Board of Medical Examiners*
 967 F.2d 998, 1003 (4th Cir. 1992) .................................................15

*Henrichs v. Valley View Development*
 474 F.3d 609 (9th Cir. 2007)............................................................17

*Hillsborough County v. Automated Medical Laboratories, Inc.*
 471 U.S. 707 (1985)..........................................................................33

*Hoblock v. Albany Cty. Bd. of Elections*
 422 F.3d 77 (2d Cir. 2005)................................................................15

*In re Harmon*
 250 F.3d 1240 (9th Cir. 2001) ....................................................20, 21

*Kanarek v. Bugliosi*
 108 Cal.App.3d 327 (1980) ..............................................................22

*Kimel v. Florida Board of Regents*
 528 U.S. 62 (2000)..............................................................................8

*Kimes v. Stone*
 84 F.3d 1121 (9th Cir. 1996) ..............................................................6

*Kokkonen v. Guardian Life Ins. Co. of Am.*
 511 U.S. 375 (1994)............................................................................5

# TABLE OF AUTHORITIES
### (continued)

                                                                              **Page**

Kowalski v. Tesmer
    543 U.S. 125 (2004)...........................................................................13

Kremer v. Chemical Constr. Corp.
    456 U.S. 461 (1982)...........................................................................17

Levald, Inc. v. City of Palm Desert
    998 F.2d 680 (9th Cir. 1993) .............................................................31

Long v. Van de Kamp
    961 F.2d 151 (9th Cir. 1992) ...............................................................9

Luben Indus. v. United States
    707 F.2d 1037 (9th Cir. 1983) ...........................................................20

Lucido v. Superior Court
    51 Cal.3d 335 (1990).........................................................................21

Lujan v. Defenders of Wildlife
    504 U.S. 555 (1992)...........................................................................13

Maryland v. Louisiana
    451 U.S. 725 (1981)...........................................................................33

McCollum v. California Department of Corrections and Rehabilitation
    647 F.3d 870 (9th Cir. 2011) .............................................................13

MedImmune, Inc. v. Genentech, Inc.
    549 U.S. 118 (2007)...........................................................................31

Metropolitan Life Ins. Co. v. Massachusetts
    471 U.S. 724 (1985)...........................................................................34

Migra v. Warrant City Sch. Dist. Bd. of Educ.
    465 U.S. 75 (1984)......................................................................17, 24

Montalvo v. Spirit Airlines
    508 F.3d 464 (9th Cir. 2007) .............................................................32

Morales v. City of Los Angeles
    214 F.3d 1151 (9th Cir. 2000) .............................................................5

# TABLE OF AUTHORITIES
## (continued)

Page

*Morehart v. County of Santa Barbara*
7 Cal.4th 725 (1994) .................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306 (1950) ................................................................ 26, 27

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*
514 U.S. 645 (1995) .................................................................... 31

*Noel v. Hall*
341 F.3d 1148 (9th Cir. 2003) ...................................................... 15

*Olsen v. Idaho State Bd. of Med.*
363 F.3d 916 (9th Cir. 2004) .......................................................... 6

*Oxygenated Fuels Ass'n v. Davis*
331 F.3d 665 (9th Cir. 2003) ........................................................ 32

*Papasan v. Allain*
478 U.S. 265 (1986) ...................................................................... 8

*Paul v. Davis*
424 U.S. 693 (1976) .................................................................... 28

*Pennhurst State School & Hosp. v. Halderman*
465 U.S. 89 (1984) ........................................................................ 8

*People v. Preston*
43 Cal.App.4th 450 (1996) ........................................................... 20

*People v. Sims*
32 Cal.3d 468 (1982) ................................................................... 20

*People v. Skidmore*
27 Cal.287 (1865) ....................................................................... 22

*Powers v. Ohio*
499 U.S. 400 (1991) .................................................................... 13

1

## TABLE OF AUTHORITIES

2

**(continued)**

Page

3    *Prospect Medical Group, Inc. v. Northridge Emergency Medical*

4    *Group*
     45 Cal.4th 497 (2009) ................................................................ *passim*

5

6    *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*
     506 U.S. 139 (1993).........................................................................9

7

8    *Reno v. Catholic Soc. Servs.*
     509 U.S. 43 (1993)..........................................................................12

9

10   *Rice v. Santa Fe Elevator Corp.*
     331 U.S. 218 (1947).........................................................................33

11   *Robi v. Five Platters, Inc.*

12   838 F.2d 318 (9th Cir. 1988) ...........................................................17

13   *Rooker v. Fidelity Trust Co.*
     263 U.S. 413 (1923).........................................................................14

14

15   *Safe Air for Everyone v. Meyer*
     373 F.3d 1035 (9th Cir. 2004) ...........................................................4

16

17   *Samara v. Matar*
     5 Cal.5th 322 (2018) ...................................................................20, 22

18

19   *Sandoval v. Superior Court*
     140 Cal.App.3d 932 (1983) .............................................................23

20

21   *Savage v. Glendale Union High Sch.*
     343 F.3d 1036 (9th Cir. 2003) ...........................................................4

22   *Schmidt v. County of Nevada*

23   808 F. Supp. 2d 1243 (E.D. Cal. 2011) ...........................................18

24   *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*

25   806 F.2d 1393 (9th Cir. 1986) .........................................................35

26   *Scott v. Breeland*
     792 F.2d 925 (9th Cir. 1986) .............................................................4

27

28

1

## TABLE OF AUTHORITIES
### (continued)

Page

*Skillsky v. Lucky Stores, Inc.*
  893 F.2d 1088 (9th Cir. 1990) ................................................................17

*Snoeck v. Brussa*
  153 F.3d 984 (9th Cir. 1998) .................................................................10

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*
  770 F.3d 1282 (9th Cir. 2014) ..............................................................30

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ..................................................................5

*Stanley v. Trustees of California State Univ.*
  433 F.3d 1129 (9th Cir. 2006) ................................................................7

*Stern v. Nix*
  840 F.2d 208 (3d Cir. 1988)..................................................................16

*Stiger v. Flippin*
  201 Cal.App.4th 646 (2011) ...................................................................3

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) ..............................................................12

*Susan B. Anthony List v. Driehaus*
  573 U.S. 149 (2014).............................................................................11

*Taylor v. Regents of Univ. of California*
  993 F.2d 710 (9th Cir. 1993) ..................................................................7

*Thomas v. Anchorage Equal Rights Com'n*
  220 F.3d 1134 (9th Cir. 2000) ....................................................... *passim*

*Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*
  222 F.3d 643 (9th Cir. 2000) ..................................................................8

*Will v. Michigan Dept. of State Police*
  491 U.S. 58 (1989)...........................................................................9, 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Wilson v. Garcia*
    471 U.S. 261 (1985)...............................................................5, 6

*Wolfe v. George*
    385 F. Supp. 2d 1004 (N.D. Cal. 2005)..............................14

*Ex Parte Young*
    209 U.S. 123 (1908)..............................................................9, 24

*Zevnik v. Superior Court*
    159 Cal.App.4th 76 (2008) ..................................................22

**STATUTES**

United States Code
    Title 28 § 1738 ......................................................................17
    Title 29 § 502 ........................................................................29
    Title 29 § 1001(b) § 2 ...........................................................31
    Title 29 § 1002(1) .................................................................34
    Title 29 § 1132(a)(1)(B)...........................................7, 29, 30
    Title 29 § 1144(a) .................................................................34
    Title 42 § 18041(d) ..............................................................33
    Title 42 § 18116 .....................................................................7
    Title 42 § 18116(a)...............................................................29

Affordable Care Act.......................................................... *passim*

Age Discrimination Act .......................................................7

Anti-Injunction Act ........................................................2, 16

# TABLE OF AUTHORITIES
**(continued)**

Page

California Health and Safety Code

§ 1340 .................................................................................................3
§ 1340 et seq. ......................................................................................3
§ 1341(a) .............................................................................................3
§ 1341(a) .............................................................................................3
§ 1343(a) .............................................................................................4
§ 1344(a) .............................................................................................3
§ 1345(f) ..............................................................................................4
§ 1345(f)(1) ........................................................................................35
§ 1345(o) .............................................................................................4
§ 1349 .................................................................................................4
§ 1375.1 ..............................................................................................4
§ 1379 .................................................................................................3
§ 1387 .................................................................................................3
§ 1391 .................................................................................................3
§ 1392 .................................................................................................3

Employee Retirement Income Security Act ................................... *passim*

Knox-Keene Act ............................................................... 3, 19, 34, 35

Medical Practice Act ....................................................................... *passim*

Rehabilitation Act § 504 ............................................................................7

Title VI .......................................................................................................7

Title IX ......................................................................................................7

## CONSTITUTIONAL PROVISIONS

United States Constitution

Eleventh Amendment .................................................................1, 8, 9
Fourteenth Amendment ......................................................26, 27, 28
Article III ...................................................................................11, 13
Article VI, Clause 2 ..............................................................1, 14, 31

1

# TABLE OF AUTHORITIES
## (continued)

Page

**COURT RULES**

California Rules of Court
   Rule 8.220(a)(l) ....................................................................................19

FEDERAL RULE OF CIVIL PROCEDURE
   12(B)(1) ...................................................................................1, 4, 8
   12(B)(6) ........................................................................................5, 8
   15(a) ..............................................................................................35

1    Defendant Christine J. Lally, Interim Executive Director of the Medical Board

2    of California, ("Defendant Lally" or "Board") respectfully submits the following

3    Memorandum of Points and Authorities in Support of her Rule 12(b) Motion to

4    Dismiss the Second Amended Complaint ("SAC").

5    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **INTRODUCTION**

7    Plaintiffs Daniel Marcus, M.D., Nancy Way, M.D., and Jeannette Martello,

8    M.D. ("Marcus," "Way," "Martello," or "Plaintiffs") seek a declaration that

9    California's laws prohibiting balance billing are preempted by the Patient

10    Protection and Affordable Care Act, 42 U.S.C. §§ 18001, et seq. ("ACA") and

11    Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq.

12    ("ERISA") and are unenforceable under the Supremacy Clause of the U.S.

13    Constitution (Article VI, Clause 2). SAC. ¶ 212. They seek a declaration that the

14    Board and the Department of Managed Health Care's ("DMHC") enforcement

15    actions against them violate the First Amendment, Due Process Clause, Equal

16    Protection Clause, 42 U.S.C. § 1983, the ACA, ERISA, and possibly the Commerce

17    Clause. SAC. ¶¶ 122, 132, 137-138, 213. They also seek to enjoin the Board and

18    the DMHC from enforcing California's laws prohibiting balance billing against

19    them. SAC ¶ 214.

20    Martello, a vexatious litigant,[1] has joined forces with two other physicians in

21    the hopes that prior state court rulings rejecting her exact constitutional challenge to

22    California's balance billing prohibition will be overturned or overlooked.

23    Defendant Lally's Motion to Dismiss the SAC should be granted with prejudice

24    because the Court lacks subject matter jurisdiction and Plaintiffs fail to state

25    cognizable claims for relief. Martello's § 1983, ACA, and ERISA claims are time-

26    barred. Eleventh Amendment immunity bars Plaintiffs' claims. Marcus and Way's

27    claims are not justiciable and they lack constitutional standing. Plaintiffs lack

28    

---

[1] Request for Judicial Notice ("RJN") & Ex. Z.

prudential standing to assert the rights or interests of third parties. The *Rooker-Feldman* doctrine, Anti-Injunction Act, and issue preclusion bar Martello's claims. Her claims are also moot. Plaintiffs fail to state cognizable claims for which relief may be granted. Plaintiffs' preemption theory fails as a matter of law.

## BACKGROUND

### I.   THE PARTIES.

**A. Plaintiffs.** Plaintiffs are physicians in California. SAC ¶ 102. The DMHC issued a cease and desist order against Martello, a Hispanic female, prohibiting her from balance billing patients for emergency services and initiated a civil action against her for violating California's balance billing prohibition. SAC ¶¶ 39-40, 47-55. The civil action resulted in a Judgment against her. *Id*. The DMHC allegedly singled Martello out for its "'case of first impression.'" SAC ¶ 40.

The DMHC issued a cease a desist order against Marcus prohibiting him from balance billing patients for emergency services. SAC ¶¶ 61-64. The DMHC issued a similar cease and desist order against Way, a Hispanic female, but it also initiated a civil action against her for violating the balance billing prohibition. SAC ¶¶ 66-74, 78. The civil action resulted in a settlement agreement. SAC ¶¶ 75.

On September 16, 2013, the Board disciplined Martello for unprofessional conduct for illegal balance billing as a violation of the Medical Practice Act. SAC ¶ 79; RJN & Ex. A. The Board allegedly singled Martello out for its "'case of first impression.'" SAC ¶ 79. The Board placed Martello on five-years' probation, permanently enjoined her from balance billing, and posted the Accusation and disciplinary action of probation on its website. SAC ¶¶ 58, 79.

The Board has not taken any disciplinary action against Marcus or Way, but the Board has not "'disavowed enforcement.'" SAC ¶ 80. They are "self-censoring" themselves to avoid castigation by the Board. *Id*.

**B. Defendants**. Defendant Lally represents the Board, a state agency that is expressly charged with enforcing "the disciplinary and criminal provisions of the

1  Medical Practice Act [Cal. Bus. & Prof. Code §§ 2000 et seq.]." Cal. Bus. & Prof.

2  Code §§ 2004(a), 2220; accord, *Stiger v. Flippin*, 201 Cal. App. 4th 646, 651

3  (2011); SAC. ¶ 119. The Board is an administrative agency within the California

4  Department of Consumer Affairs. Cal. Bus. & Prof. Code §§ 101(b) and 2001(a).

5  It is authorized to license and discipline medical practitioners. SAC ¶ 117; *Arnett v.*

6  *Dal Cielo,* 14 Cal. 4th 4, 7, 923 P.2d 1, 56 Cal. Rptr. 2d 706 (1996). The Board is

7  authorized to investigate complaints from the public that a physician may be guilty

8  of unprofessional conduct. Cal. Bus. and Prof. Code §§ 2220, 2220.5. It may

9  discipline a licensee for balance billing to the extent that it rises to the level of

10  unprofessional conduct. Cal. Bus. & Prof. Code § 2234; SAC ¶ 118. Under

11  California Business and Professions Code sections 803.1 and 2027, the Board

12  discloses information on the "current status" of the license of current and former

13  licensees to the public via its website, such as enforcement actions.

14      Defendant Shelley Rouillard, Director of the DMHC, is expressly charged

15  with the duty of enforcing California's balancing billing prohibition. SAC ¶ 111;

16  Cal. Health & Safety Code §§ 1340, 1341(a), 1379; Cal. Code Regs., tit. 28, §

17  1300.71.39. The DMHC is an administrative agency within the California Health

18  and Human Services Agency. Cal. Health & Safety Code § 1341(a). The DMHC

19  regulates health care service plans and the health care service plan business. *Id.*

20  **II.    CALIFORNIA'S BALANCING BILLING PROHIBITION.**

21      The Knox-Keene Act ("Act") is codified in California Health and Safety Code

22  section 1340 et seq. "[It] is a "comprehensive system of licensing and regulation

23  under the jurisdiction of the Department of Managed Health Care." *Prospect*

24  *Medical Group, Inc. v. Northridge Emergency Medical Group*, 45 Cal. 4th 497, 504

25  (2009). The Act gives the Director the authority to take enforcement action against

26  "any person" who violates the Act, and authorizes the Director to, among other

27  things, issue cease and desist orders or seek civil penalties and injunctive or other

28  equitable relief against that person in Superior Court. Cal. Health & Safety Code

1    §§ 1344(a), 1387, 1391, 1392; Cal. Code Regs., tit. 28, § 1300.87.

2        Balance billing occurs when a physician bills a patient the balance of what the

3    patient's health insurance company has not paid for medical services rendered to

4    them. SAC ¶ 5. In *Prospect*, the California Supreme Court held that the Act

5    prohibits out-of-network providers who provide emergency room health services

6    from balance billing patients; the providers may instead dispute payment directly

7    with the health plan. *Prospect Medical Group, Inc.*, 45 Cal. 4th at 502. The Act

8    protects enrollees of health care service plans licensed under the Act. *Id.* at 504;

9    Health & Saf. Code §§ 1343(a), 1345(f) & (o), 1349, 1375.1.

10       In 2008, while the *Prospect* case was pending, the DMHC adopted a

11   regulation prohibiting a provider of emergency services from balance billing

12   patients, including but not limited to hospitals and hospital-based physicians such

13   as on-call specialists. *Prospect Medical Group, Inc.*, 45 Cal. 4th at 510; Cal. Code

14   Regs. tit. 28, § 1300.71.39.

15   **STANDARD OF REVIEW**

16   **I.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).**

17       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the

18   subject matter jurisdiction of the Court. *See, e.g., Savage v. Glendale Union High*

19   *Sch.*, 343 F.3d 1036, 1039-1040 (9th Cir. 2003). Motions under Rule 12(b)(1) may

20   be either "facial," as here, or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d

21   1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

22   2000). In a facial attack, the movant argues that the allegations of a complaint are

23   insufficient to establish federal jurisdiction. *Id.*

24       When subject matter jurisdiction is challenged, the burden of proof is placed

25   on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927

26   (9th Cir. 1986) ("the party seeking to invoke the court's jurisdiction bears the

27   burden of establishing that jurisdiction exists"). A court will presume lack of

28   subject matter jurisdiction until the plaintiff proves otherwise in response to a Rule

4

1   12(b)(1) motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

2   375, 376-378 (1994).

3   **II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).**

4       A dismissal under Rule 12(b)(6) is proper where there is either a lack of a

5   cognizable legal theory or the absence of sufficient facts alleged under a cognizable

6   legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

7   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

8   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

9   *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  When a plaintiff

10  pleads facts allowing "the court to draw the reasonable inference that the defendant

11  is liable" for the alleged misconduct, a claim has facial plausibility. *Id.* "The

12  plausibility standard is not akin to a 'probability requirement,' but it asks for more

13  than a sheer possibility that a defendant has acted unlawfully." *Id.*  In ruling on a

14  motion to dismiss under Rule 12(b)(6), the court generally considers only the

15  pleadings, and accepts as true the allegations contained in the complaint. *Id.*

16  However, the court does not accept as true formulaic or conclusory allegations. *Id.*

17  at 681-682. "The court need not . . . accept as true allegations that contradict

18  matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State*

19  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

**ARGUMENT**

20

21  **I.    MARTELLO'S SECTION 1983 CLAIMS ARE TIME-BARRED.**

22      Martello § 1983 claims (Counts I, II, and III) are time-barred.  In § 1983

23  actions, federal courts apply the statute of limitations of the forum state for personal

24  injury claims. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *Fink v. Shedler*, 192

25  F.3d 911, 914 (9th Cir. 1999).  California Code of Civil Procedure section 335.1

26  provides a two-year statute of limitations for personal injury claims.  Federal law

27  determines when a civil rights claim accrues. *Morales v. City of Los Angeles*, 214

28  F.3d 1151, 1153-1154 (9th Cir. 2000).  A § 1983 "claim accrues when the plaintiff

1  knows, or should know, of the injury which is the basis of the cause of action.

2  *Fink*, 192 F.3d at 914; *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). To

3  ascertain when an act occurs for statute of limitations purposes, 'the question is

4  when the operative decision was made, not when the decision is carried out.'

5  (citation omitted)." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir.

6  2004).

7      Martello alleges injuries stemming from the Board's disciplinary decision.

8  Thus, her claim at best alleges a single violation followed by continuing

9  consequences, which is not actionable. *Bird v. Department of Human Services*, 935

10  F.3d 738, 748 (9th Cir. 2019). The two-year statute of limitations began to run at

11  the very latest by September 16, 2013, when the final decision on the disciplinary

12  action was served on Martello and was necessarily contemporaneously posted on

13  the Board's website. RJN & Ex. A at 1-2; Cal. Bus. & Prof. Code §§ 803.1, 2027.

14  She knew or had reason to know of her injuries at that time. *Id*. The limitations

15  period applies to all § 1983 claims against the Board, regardless of the civil right

16  asserted. *Wilson*, 471 U.S. at 272. Martello filed her complaint in this case on

17  September 17, 2019, well outside the two-year limitations period. Dkt No. 1.

18      The time-barred allegations include, but are not limited to: injuries from the

19  Board's order and decision allegedly enjoining her from balance billing forever--

20  SAC ¶¶ 79, 156, 165; damage to her reputation and goodwill as a result of the

21  disciplinary charges and posting of the disciplinary action and order on the Board's

22  website--SAC ¶¶ 58, 81, 166, 168; assignment of a vexatious litigant label as a

23  result of the Board's order that she dismiss lawsuits--SAC ¶¶ 56-59.

24      The continuing violations doctrine does not apply because Martello has

25  alleged discrete acts and individualized claims for violation of her constitutional

26  and federal rights stemming from the disciplinary action. What she is essentially

27  alleging is a continuing effect of an original decision to discipline her license. *Bird*,

28  at p. 748. In addition, in a § 1983 case, discrete acts are not actionable if time

6

1   barred, even when they are related to acts alleged in a timely-filed claim.

2   *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th

3   Cir. 2003).

4   **II.   MARTELLO'S CLAIM UNDER THE ACA IS TIME-BARRED.**

5          Martello's claim under the ACA (Count IV) directly stems from the

6   disciplinary action and therefore, is time-barred.  Section 1557 of the ACA

7   prohibits discrimination in a health care setting.  Section 1557 references and

8   incorporates four different civil rights statutes that prohibit discrimination on the

9   basis of protected categories: Title VI (race, color, and national origin); Title IX

10   (sex); the Age Discrimination Act (age); and section 504 of the Rehabilitation Act

11   (disability).  42 U.S.C. § 18116.  Title VI (race, color, national origin) claims are

12   governed by the same state limitations period applicable to claims brought under §

13   1983.  *Taylor v. Regents of Univ. of California*, 993 F.2d 710, 712 (9th Cir. 1993).

14   Title IX (sex) claims are subject to the applicable state statute of limitations for

15   personal injury actions.  *Stanley v. Trustees of California State Univ.*, 433 F.3d

16   1129, 1136 (9th Cir. 2006).

17          In Count IV, Martello alleges that the Board singled her out for its case of first

18   impression as the only physician in California to be prosecuted for balance billing

19   as a violation of the Medical Practice Act.  SAC ¶ 181.  Since a two-year statute of

20   limitations applies to personal injury and § 1983 claims, like her § 1983 claims, her

21   ACA discrimination claim is also time-barred.  Cal. Code Civ. Proc. § 335.1.

22   **III.   MARTELLO'S CLAIM UNDER ERISA IS TIME-BARRED.**

23          Martello's claim under ERISA (Count V) also directly stems from the

24   disciplinary action and therefore, is time-barred.  Martello brings her ERISA

25   benefits claim under 29 U.S.C. § 1132(a)(1)(B), which creates a cause of action for

26   a benefit plan participant "to recover benefits due to him under the terms of his

27   plan, to enforce his rights under the terms of the plan, or to clarify his rights to

28   future benefits under the terms of the plan."  SAC ¶¶ 183, 185, 186.  There is no

1    federal statute of limitation that applies to civil actions seeking benefits under

2    ERISA. *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*,

3    222 F.3d 643, 646 (9th Cir. 2000). Courts "look to the most analogous state

4    statute" in the state where the claim for benefits arose. *Id.* In California, the most

5    analogous statute is California Code of Civil Procedure section 337, which asserts a

6    four-year statute of limitations for actions involving written contracts. *Id.* at 648.

7        Martello alleges that she has the right to bring an action to recover benefits

8    and enforce her rights under an ERISA plan. SAC ¶ 183. She claims beneficiaries

9    of self-funded plans assigned their rights to her. SAC ¶ 184. She alleges that the

10   Board illegally asserted jurisdiction over the ERISA self-funded plans when it

11   prosecuted her for balance billing. SAC ¶¶ 185-186. Thus, her claims stem from

12   the 2013 disciplinary action. Martello filed her complaint in this case on September

13   17, 2019, well outside the four-year limitations period. Dkt No. 1.

14   **IV.  ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFFS' CLAIMS.**

15       The Eleventh Amendment prohibits federal jurisdiction over claims against a

16   state--whether brought by its own citizens or non-citizens--unless the state has

17   consented to suit or Congress has abrogated its immunity.[2] *Kimel v. Florida Board*

18   *of Regents*, 528 U.S. 62, 72-73 (2000); *Papasan v. Allain*, 478 U.S. 265, 276

19   (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-101

20   (1984). "The Eleventh Amendment bars suits which seek either damages or

21   injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its

22   agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1995) (citation

23   omitted); *Pennhurst*, 465 U.S. at 100 (Eleventh Amendment immunity applies to

24   both states and their agencies or departments, and "regardless of the nature of the

25   relief sought").

26

27       [2] Defendant contends that Eleventh Amendment immunity bars Plaintiffs'
action against her in its entirety. She moves to dismiss the complaint on that basis
under Federal Rule of Civil Procedure 12(b)(1), or alternatively, under Rule

28   12(b)(6).

1.   A state's immunity under the Eleventh Amendment extends to state officers

2   acting on behalf of the state. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf*

3   *& Eddy, Inc.*, 506 U.S. 139, 146 (1993). A suit against a state official in his or her

4   official capacity, as in this case, is not a suit against the official but rather is a suit

5   against the official's office; as such, it is no different from a suit against the state

6   itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

7     An exception under *Ex Parte Young*, 209 U.S. 123 (1908) allows citizens to

8   sue state officers in their official capacities "for prospective declaratory or

9   injunctive relief . . . for their alleged violations of federal law." *Coalition to Defend*

10   *Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). There must be a

11   (1) connection between the individual state official sued and enforcement of the

12   allegedly unconstitutional statute; and (2) threat of enforcement. *Long v. Van de*

13   *Kamp*, 961 F.2d 151, 152 (9th Cir. 1992). The connection "'must be fairly direct; a

14   generalized duty to enforce state law or general supervisory power over the persons

15   responsible for enforcing the challenged provision will not subject an official to

16   suit.'" *Coalition to Defend Affirmative Action*, 674 F.3d at 1134 (citation omitted).

17     Here, because the SAC is directed at the state office held by Defendant Lally

18   and not directed at her as an individual, she is entitled to immunity under the

19   Eleventh Amendment. SAC ¶ 116. To the extent that Martello seeks retrospective

20   relief, her claims are barred by Eleventh Amendment immunity.

21     With respect to Marcus and Way's pre-enforcement claims, they allege that

22   Defendant Lally has a direct connection with the enforcement of California's

23   balance billing prohibition as a violation of the Medical Practice Act. SAC ¶ 118.

24   For purposes of this motion only, Defendant Lally will assume that the first prong

25   of the *Ex Parte Young* exception is satisfied. However, the second prong does not

26   apply. This case is akin to that of *Thomas v. Anchorage Equal Rights Com'n*, 220

27   F.3d 1134 (9th Cir. 2000) wherein the landlords' pre-enforcement challenge to a

28   statute and ordinance prohibiting marital status discrimination in rental decisions

1    was found to not be ripe for review. *Id.* No prospective tenant had ever

2    complained to the landlords or filed a complaint against them, the principal

3    enforcement agencies had not initiated an investigation into the landlord's rental

4    practices or initiated a civil enforcement action or criminal prosecution under the

5    challenged laws, no violation of the laws was on the horizon and no enforcement

6    action or prosecution was either threatened or imminent. *Id.* The Court concluded

7    that the dispute was hypothetical and the injury was speculative. *Id.*

8         Here, Marcus and Way do not allege that a complaint has been filed with the

9    Board against them for balance billing or that the Board has initiated an

10   investigation or disciplinary proceedings against them for balance billing. They do

11   not allege that the Board has threatened enforcement of California's balance billing

12   prohibition against them. Any supposed threat of investigation or enforcement is

13   "imaginary, speculative or chimerical." *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th

14   Cir. 1998). (citation omitted).

15        They allege in general terms that the Board "continues to enforce violations of

16   California's conflicting balancing billing prohibition as unprofessional conduct . . .

17   ." SAC ¶ 120. But this assertion is deficient and contradicted by the allegation that

18   the Board has prosecuted only <u>one</u> physician for unprofessional conduct in

19   connection with balance billing, namely Martello, who was allegedly singled out by

20   the Board for its "case of first impression" for prosecution <u>six years ago</u> in

21   September 2013. SAC ¶¶ 79, 79; RJN & Ex. A. Since the *Prospect* case and the

22   enactment of the DMHC regulation in <u>2009 (11 years ago)</u>, the Board has

23   prosecuted only one physician for illegal balance billing. *Id.* There is no specific

24   allegation of recent enforcement against physicians other than Martello so as to

25   render Plaintiffs' fear of enforcement real and imminent rather than hypothetical.

26        The Supreme Court has held that "[w]hen the plaintiff has alleged an intention

27   to engage in a course of conduct arguably affected with a constitutional interest, but

28   proscribed by a statute," the plaintiff may establish injury in fact by demonstrating

1   "a credible threat of prosecution." *Babbitt v. United Farm Workers Nat. Union*,

2   442 U.S. 289, 298 (1979) (internal quotation marks omitted). The standard has

3   been generally applied in First Amendment cases involving protected speech.

4   *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). But unlike First

5   Amendment cases, the alleged right to balance bill, as a matter of law, is not

6   affected with any constitutional interest. See Argument XI(A), *infra*, which is

7   incorporated by reference. Thus, they fail to allege a credible threat of prosecution.

8        Marcus and Way may claim that they do not need to wait until they are

9   exposed to disciplinary action by the Board to bring a claim in federal court. But

10  any alleged danger of disciplinary action is of their own making and can be avoided

11  by complying with state law, as there is no conflict between state and federal law.

12  **V.    MARCUS AND WAY'S CLAIMS ARE NOT JUSTICIABLE.**

13       Marcus and Way have failed to allege that they face a realistic danger of

14  sustaining a direct injury as a result of the Board's alleged enforcement or alleged

15  threatened enforcement of California's balanced billing prohibition. As the Ninth

16  Circuit has stated, "ripeness is 'peculiarly a question of timing,' (citations omitted)

17  designed to 'prevent the courts, through avoidance of premature adjudication, from

18  entangling themselves in abstract disagreements." *Thomas,* 220 F.3d at 1138

19  (citations omitted). A determination of judicial ripeness encompasses both an

20  Article III constitutional component and a prudential component. *Id.*

21       The constitutional component demands that a plaintiff "face 'a realistic danger

22  of sustaining a direct injury as a result of the statute's operation or enforcement'"

23  and not merely an "imaginary" or "speculative" injury. *Thomas*, 220 F.3d at 1139

24  (citation omitted); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2

25  (9th Cir. 2003) ("constitutional component of ripeness is synonymous with the

26  injury-in-fact prong of the standing inquiry"). The prudential aspect of ripeness

27  serves as a "tool that courts may use to enhance the accuracy of their decisions and

28  to avoid becoming embroiled in adjudications that may later turn out to be

11

1   unnecessary. . . ." *American Sav. Bank v. UBS Fin. Servs.*, 347 F.3d 436, 440 (2d

2   Cir. 2003).  The prudential analysis includes a two-pronged inquiry: (1) the "fitness

3   of the issues for judicial decision" and (2) "the hardship to the parties of

4   withholding court consideration." *Thomas*, 220 F.3d at 1141 (citations omitted).

5        When a litigant brings a pre-enforcement challenge, as here, the courts have

6   found that "a generalized threat of prosecution" will not satisfy the ripeness

7   requirement. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009).

8   Rather, there must be a genuine threat of imminent prosecution. *Id.*  A pre-

9   enforcement challenge is only ripe if a plaintiff is presented with "the immediate

10  dilemma to choose between complying with newly imposed, disadvantageous

11  restrictions and risking serious penalties for violation." *Reno v. Catholic Soc.*

12  *Servs.*, 509 U.S. 43, 57 (1993).  There are three factors to analyze the genuineness

13  of a threat of prosecution: 1) whether the plaintiffs have articulated a "concrete

14  plan" to violate the law in question; 2) whether the prosecuting authorities have

15  communicated a specific warning or threat to initiate proceedings; and 3) the

16  history of past prosecution or enforcement under the challenged statute. *Id.*  "The

17  potential plaintiff must have 'an actual and well-founded fear that the law will be

18  enforced against [him or her]." *Cal. Pro-Life Council, Inc.*, 328 F.3d at 1095.

19       Here, Marcus and Way have not demonstrated the presence of any of the

20  above factors.  Their pre-enforcement action is facially not ripe for judicial review

21  based on both the constitutional and prudential aspects of ripeness.  The absence of

22  any real or imminent threat of enforcement by the Board for unprofessional conduct

23  under the Medical Practice Act undermines any claim of hardship.

24  **VI.  MARCUS AND WAY LACK CONSTITUTIONAL STANDING.**

25       For the same reasons that Marcus and Ways' claims against Defendant Lally

26  are not ripe, they lacks standing to bring their claims against her.  "The

27  constitutional component of the ripeness inquiry is often treated under the rubric of

28  standing and, in many cases, ripeness coincides squarely with standing's injury in

1   fact prong." *Thomas*, 220 F.3d at 1138. Marcus and Way must demonstrate three

2   elements, which are said to constitute the "irreducible constitutional minimum" of

3   Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

4   First, a plaintiff must have suffered an "injury-in-fact" to a legally protected

5   interest. The injury must be both "concrete and particularized" and "actual or

6   imminent," as opposed to "conjectural or hypothetical." *Id.* at 560 (citation

7   omitted). Second, there must be a causal connection between the injury and the

8   challenged statute. *Id.* Third, it must be likely that the injury will be "redressed by

9   a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

10      Marcus and Way fail to allege the existence of any actual or imminent injury

11   by Defendant Lally, and therefore, the three elements which are said to constitute

12   the "irreducible constitutional minimum" of Article III standing are absent.

13   **VII. PLAINTIFFS LACK PRUDENTIAL STANDING TO ASSERT THE RIGHTS OR
        INTERESTS OF THIRD PARTIES.**

14

15      Plaintiffs are barred from asserting the rights of third parties, namely similarly

16   situated California physicians who allegedly continue to have California's

17   conflicting balance billing prohibition enforced unto them. SAC ¶¶ 104-106.

18   Generally, a party must assert his own rights, and cannot rely on the rights of

19   others. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *McCollum v. California

20   Department of Corrections and Rehabilitation*, 647 F.3d 870, 879-880 (9th Cir.

21   2011). To assert the rights of third parties, (1) the plaintiff must have suffered an

22   "'injury in fact,'" giving the plaintiff a "sufficiently concrete interest" in the

23   outcome of the issue in dispute, (2) the plaintiff must show that he has a close

24   relation to the third parties so as to have consistent interests, and (3) that there is

25   some hindrance to the ability of the third parties to protect their own interests.

     *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

26

27      Here, Marcus and Way fail to allege a real threat of enforcement by the Board

28   against them or any other physician. Even though the Board did discipline

13

1    Martello's physician's license for unprofessional conduct in connection with illegal

2    balance billing and even though all three plaintiffs seek to adjudicate the rights of

3    other California physicians, that class of persons is unnecessarily overbroad and,

4    therefore, Plaintiffs have not demonstrated that they have a close relationship with

5    such parties. *Wolfe v. George*, 385 F. Supp. 2d 1004, 1021 (N.D. Cal. 2005).

6        In addition, the alleged right to balance bill, as a matter of law, is not affected

7    with any constitutional interest. See Argument XI(A), *infra*, which is incorporated

8    by reference. Furthermore nothing prevents California physicians from asserting

9    their own interests if the Board were to take action against their physician's license.

10   Those physicians would have the right to challenge the action in state

11   administrative court, Superior Court, and state appellate courts. Cal. Gov. Code, §§

12   11506(a)(1), 11523; Cal. Bus. & Prof. Code, § 2337. Plaintiffs provide no details

13   as to why other California physicians cannot do the same.

14   **VIII. THE *ROOKER-FELDMAN* DOCTRINE BARS MARTELLO'S CLAIMS.**

15       Martello's claims are barred by the *Rooker-Feldman* doctrine because the

16   legal claims and injuries she alleges arise from state courts' purportedly erroneous

17   judgments prohibiting her from balance billing and finding that federal law does not

18   preempt California's prohibition on balance billing.[3] The federal constitutional

19   claims are inextricably intertwined with the states' courts judgments. Her request

20   for relief is contingent upon a federal court finding that the state courts' decisions

21   were in error. Martello was bound to seek review to the California Supreme Court

22   and then to the U.S. Supreme Court.

23       Federal courts generally lack subject matter jurisdiction to review final state

24   court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District*

25   _____

26   [3] In a related case, the district court granted the Board and DMHC's motions
     to dismiss Martello's action challenging the constitutionality of California's
27   balance billing prohibition based on the *Rooker-Feldman* doctrine, Younger
     abstention, and failure to state a cognizable claim under the Supremacy Clause.
28   RJN & Ex. W. Reconsideration was denied. RJN & Ex. X. The Ninth Circuit
     affirmed the judgment on appeal. RJN & Ex. Y.

1    *of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).  See e.g.,

2    *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003) (Doctrine prohibits district courts

3    from hearing a direct appeal or a "de facto appeal" from a state court judgment);

4    *Guess vs. Board of Medical Examiners*, 967 F.2d 998, 1003 (4th Cir. 1992)

5    (Doctrine does not allow the same constitutional challenge to be made in state court

6    and then again in federal court).

7         "If the federal constitutional claims presented to the district court are

8    'inextricably intertwined' with the state court's judgment, then [the plaintiff] is

9    essentially asking the district court to review the state court's decision, which the

10   district court may not do." *Doe and Associates Law Offices v. Napolitano*, 252

11   F.3d 1026, 1029 (9th Cir. 2001).  The elements of the *Rooker-Feldman* doctrine

12   are: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must

13   complain of injuries caused by a state-court judgment; (3) the plaintiff must invite

14   district court review and rejection of that judgment; and (4) the state-court

15   judgment must have been rendered before the district court case started.  *Hoblock v.*

16   *Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  To determine whether

17   an action is a de facto appeal, federal courts look to the relief sought by the

18   plaintiff.  *Cooper v. Ramos*, 704 F.3d 772, 777-778 (9th Cir. 2012). (doctrine barred

19   constitutional challenges because plaintiff in fact challenged the particular outcome

20   in his state case; he asserted as his injury legal errors by the state court and sought

21   as his remedy relief from the state court judgment).

22        No matter how Martello frames her SAC, she seeks de facto review of two

23   state court judgments: (1) the Superior Court's denial of her petition for writ of

24   mandate seeking judicial review of the Board's disciplinary action against her

25   physician's license; and (2) the Superior Court's entry of judgment against her in

26   the DMHC's civil action for violating the balance billing prohibition (which was

27   affirmed on appeal).  RJN & Ex. D-K, S-U.  Martello raised identical preemption

28   arguments in both cases and the state courts rejected it, concluding that the DMHC

1    and the Board's enforcement actions were not precluded by federal law. See

2    Arguments X(A) & X(C), *infra*, which are incorporated by reference.

3        The SAC in actuality challenges state courts' fact-specific application of

4    California's prohibition on balance billing to her case and alleges injuries from

5    those decisions. Some of the injuries she alleges from the state court decisions are

6    the following: the Board's disciplinary decision has adversely affected her ability to

7    practice medicine in California and nationwide. SAC ¶ 56. She claims the

8    DMHC's judgment and Board's disciplinary action will remain on their website

9    forever, destroying her reputation and goodwill. SAC ¶¶ 58, 81-82. She alleges the

10    DMHC and Board's decisions require her to dismiss lawsuits that she initiated

11    against patients for the balance of her bills, which resulted in a vexatious litigant

12    label and interferes with her right of access to the courts. SAC ¶ 59.

13        In order to grant the declaratory and injunctive relief that Martello seeks, this

14    Court would have to essentially rule that the state courts erred as a matter of law.

15    Thus, the federal claims are inextricably intertwined with the state court judgments,

16    and this Court would impermissibly act as an appellate court reviewing state court

17    judgments. Therefore, by asking this Court to enjoin the Board from enforcing the

18    balance billing laws, and to hold the balance billing laws are invalid, Martello in

19    essence is asking the Court to reverse the state courts' ruling; this is prohibited by

20    the *Rooker-Feldman* Doctrine.

21        Martello's attempt to act on behalf of other similarly situated physicians does

22    not change the outcome. See e.g., *Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988) (a

23    plaintiff's reference to himself and other similarly situated attorneys did not change

24    the fact that plaintiff was essentially seeking reversal of a state judgment disbarring

25    him from the practice of law in federal court).

26    IX.  **THE ANTI-INJUNCTION ACT BARS MARTELLO'S CLAIMS.**

27        The Anti-Injunction Act, 28 U.S.C. § 2283 also bars Martello's claim for

28    injunctive relief. No matter how she spins her claims, granting an injunction would

1  require the federal court to conclude that the state courts' decisions were wrong and
2  void. *Henrichs v. Valley View Development*, 474 F.3d 609, 616 (9th Cir. 2007).
3  "An injunction may not be used to evade the dictates of the Act if the injunction
4  effectively blocks a state court judgment." *Id.*

5  **X.  MARTELLO'S CLAIMS ARE MOOT.**

6       To the extent that Martello seeks retrospective relief such as reinstatement of
7  her physician's license free and clear of any restrictions, her claims are moot. *City*
8  *of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) ("A case is moot when the issues
9  presented are no longer 'live' or the parties lack a legally cognizable interest in the
10 outcome").  She has completed her probation and her license is now unrestricted.
11 RJN & Ex. V.

12 **XI.  ISSUE PRECLUSION BARS MARTELLO'S CLAIMS.**

13      Martello is collaterally estopped from raising the same issues that were
14 previously adjudicated in state administrative, trial, and appellate courts and
15 decided against her.  Title 28 U.S.C. § 1738 provides that state judicial proceedings
16 receive the same full faith and credit in every federal court as they would have in
17 the courts of the state in which the matter originated.  Federal courts must give
18 preclusive effect to administrative determinations reviewed by a state court.  28
19 U.S.C. § 1738; *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)
20 (federal court action was precluded by prior state court judgment reviewing
21 administrative determination).  "It is now settled that a federal court must give to a
22 state-court judgment the same preclusive effect as would be given that judgment
23 under the law of the State in which the judgment was rendered." *Migra v. Warrant*
24 *City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984).  Title 28 U.S.C. § 1738
25 requires federal courts to apply the preclusion law of a state to judgments issued by
26 courts of that state. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988);
27 *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1095 (9th Cir. 1990).  Therefore, the
28 laws of California apply in this case.

In California, collateral estoppel precludes relitigation of an issue previously adjudicated when the following elements are satisfied: (1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) This issue must have been actually litigated in the former proceeding; (3) It must have been necessarily decided in the former proceeding; (4) The decision in the former proceeding must be final and on the merits; and (5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Schmidt v. County of Nevada*, 808 F. Supp. 2d 1243, 1249 (E.D. Cal. 2011) (citing *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513 (2009).

## A. Preclusive Effect of Judgment on Judicial Review of the Board's Administrative Disciplinary Proceeding.

In October 2013, Martello filed a Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief against the Board in Superior Court. RJN & Ex. D at 1. She sought judicial review of the Board's disciplinary action against her physician's license for unprofessional conduct in connection with illegal balance billing. *Id.* at 1, 16. She alleged that the DMHC's regulation prohibiting balance billing for emergency services conflicted with and was preempted by federal law. *Id.* at 1, 16-19. She further alleged that the HMOs at issue were exempt from Knox-Keene Act under ERISA and that ERISA governed the self-funded plans of two patients. *Id.* at 16, 21. Among other relief, she asked the court to declare the DMHC regulation invalid and direct the Board to set aside its disciplinary decision. *Id.* at 1, 16. In March 2015, the court held a hearing on the petition and denied it, specifically rejecting her arguments. RJN & Ex. D at 25, E.

In her Motion for a New Trial, Martello renewed her arguments concerning the ACA and ERISA. RJN & Ex. H at 3-4. The Court again rejected them and entered Judgment against her. *Id.*; RJN & Ex. J. The Court also addressed and rejected her argument that the Board illegally asserted jurisdiction over the ERISA plans because they were self-funded, recalling it had been previously rejected at

1    trial.  RJN & Ex. H at 4.  Martello appealed the Judgment, but on May 25, 2017, the

2    court of appeal dismissed that appeal pursuant to California Rules of Court, rule

3    8.220(a)(l) [failure to file an opening brief].  RJN & Ex. K, Q at 5.

4        Although the administrative and state court cases addressed the issue of

5    license discipline, whereas this case addresses the right to balance bill patients for

6    emergency services, the issues in both cases are the same, were actually litigated,

7    and were necessarily decided.  In the administrative case, the parties litigated

8    whether ERISA preempted the Knox-Keene Act before the ALJ, who rendered a

9    proposed decision imposing discipline on Martello's license and determining the

10   ERISA preemption adversely to her.  RJN & Ex. A at 028-029.  The Board adopted

11   the proposed decision.  *Id.* at 005.  In a Petition for Reconsideration, which was

12   opposed, Martello then argued that the ACA preempted the Knox-Keene Act.  RJN

13   & Ex. B, C.  The Board did not act on the petition, resulting in the denial of the

14   petition by operation of law.  Cal. Gov. Code, § 11521(a); RJN & Ex. A at 001.

15       Having preserved both issues for judicial review (*Amluxen v. Regents of*

16   *University of California,* 53 Cal. App. 3d 27, 36 (1975)), Martello raised the issues

17   in her petition challenging the disciplinary action before the Superior Court

18   pursuant to California Code of Civil Procedure section 1094.5.  The Superior Court

19   considered the issues based on the parties' briefs and a hearing on the merits.  Ex.

20   D, at 1.  The Superior Court addressed the issues again in response to Martello's

21   Motion for a New Trial and held a hearing on the merits.  RJN & Ex. H at 1, I.  The

22   superior court denied the motion.  On February 9, 2016, the superior court entered a

23   final judgment consistent with its rulings.  RJN & Ex. J.  Additionally, the Court of

24   Appeal granted the Board's motion to dismiss and dismissed the appeal for failure

25   to file an opening brief, leaving intact the superior court and Board's decisions.

26   RJN & Exs. K, Q at 5.

27       The decision in the former proceeding is final and on the merits.  An adverse

28   ruling in a judicial proceeding is appealable once the trial court renders a final

19

judgment.  Cal. Code Civ. Proc. § 904.1(a); *Morehart v. County of Santa Barbara*,
7 Cal. 4th 725, 740-741 (1994).  "This general rule applies equally in administrative
mandamus proceedings . . . a 'special proceeding of a civil nature' governed by the
provisions of part 3 of the Code of Civil Procedure." *Dhillon v. John Muir Health*,
2 Cal. 5th 1109, 1115 (2017) (citing *Knoll v. Davidson*, 12 Cal. 3d 335, 343 (1974).
The general test to determine whether a court's order is final and appealable is that
if no issue is left for future consideration by the court except the fact of compliance
or noncompliance with the terms of the first decree, that decree is final.  *Id.*

"[I]t is a well established rule that only judgments which are free from direct
attack are final and may not be relitigated." *People v. Sims*, 32 Cal. 3d 468, 486
(1982), superseded by statute on other grounds as stated in *People v. Preston*, 43
Cal. App. 4th 450, 458 (1996); *Samara v. Matar*, 5 Cal. 5th 322, 335 (2018).  Here,
when the Court of Appeal dismissed the appeal for failure to file an opening brief,
the judgment of the Superior Court became final and has preclusive effect.  RJN &
Exs. K, Q at 5.  Thus, the issues were actually litigated, necessarily decided, and
resulted in a final judgment on the merits. *Luben Indus. v. United States*, 707 F.2d
1037, 1040 (9th Cir. 1983); Restatement (Second) of Judgments § 13 comment g
(1982).

The parties are in privity.  In California, "the party *against whom* preclusion is
sought must be the same as, or in privity with, the party to the former proceedings."
*In re Harmon*, 250 F.3d 1240, 1246 (9th Cir. 2001) (emphasis added.)  The privity
inquiry requires that the Court assess only whether Martello--the party against
whom preclusion is sought--"is the same party, or in privity with, the party to the
former proceeding." *Id.*  Here, Martello is the same party as in the former
proceedings because she was the respondent in the underlying administrative action
and the petitioner in the superior court proceedings.  Therefore, Martello is the
same party as in the former proceedings.  The issue preclusion precludes relitigation
in federal court of the issues adjudicated in the administrative and state courts.

### B.    Preclusive Effect of State Court Order in Petition for Traditional Writ of Mandate and Complaint.

In February of 2014, Martello filed a Second Amended Petition for Writ of Mandate and Complaint for Injunctive and Declaratory relief in Superior Court, which added the Board as a defendant to a case initially filed against the DMHC. RJN & Ex. Q at 5. She asserted two causes of action. *Id.* The first cause of action was for discriminatory enforcement. *Id.* The second cause of action was for "abuse of discretion and not proceeding in a manner in accordance with the law." *Id.* The second cause of action alleged, in relevant part, that the DMHC's civil action and the Board's disciplinary proceeding against her were unlawful because the regulation they enforced conflicted with the ACA. *Id.* at 5-6. Martello "sought a declaration invalidating the regulation prohibiting balance billing for emergency services; an injunction prohibiting the [DMHC], the Board, and the Attorney General from engaging in any enforcement action against balance billing based on Knox-Keene, the [DMHC] regulation, or the holding in *Prospect*; and dismissal of *People v. Martello* and the Board's disciplinary action" against her. *Id.* at 6. Thus, the issues are identical to those decided in a former proceeding.

The issues were actually litigated and necessarily decided. In addressing the "necessarily litigated" element of collateral estoppel courts have held that it generally means "only that the resolution of the issue was not "entirely unnecessary" to the judgment in the initial proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990). Here, after considering the parties briefs and hearing oral argument, the Superior Court sustained the demurrers "pursuant to Code of Civil Procedure section 430.10, subsections (a) [lack of jurisdiction], (c) [another action pending], (d) [defect or misjoinder of parties] and/or (e) [failure to state a cause of action], because [Martello] has raised the same issues and sued the same parties in two other pending cases." RJN & Ex. L at 004. The court entered judgment, dismissing the petition and complaint with prejudice. RJN & Ex. M.

1    Martello appealed.

2         Although the Court of Appeal reversed the judgment, with respect to the

3    second cause of action, the court embraced the Superior Court's ruling, addressed

4    the merits, and held that the trial court properly sustained the Board's demurrer to

5    the cause of action.  RJN & Ex. Q at 15-17, R.  "[I]f a trial court relies on

6    alternative grounds to support its decision and an appellate court affirms the

7    decision based on fewer than all of those grounds, only the grounds relied on by the

8    appellate court can establish collateral estoppel." *Zevnik v. Superior Court*, 159

9    Cal. App. 4th 76, 79 (2008); Cf. *Samara*, 5 Cal. 5th at 334 ("a ground reached by

10   the trial court and properly challenged on appeal, but not embraced by the appellate

11   court's decision, should not affect the judgment's preclusive effect."), overruling

12   *People v. Skidmore* 27 Cal.287 (1865).

13        The Court of Appeal noted that Martello essentially challenged the validity of

14   the regulation prohibiting balance billing for emergency medical services and

15   perhaps the California Supreme Court's holding in the *Prospect* case.  RJN & Ex. Q

16   at 15.  It also noted, in relevant part, that she contended that federal law preempted

17   the balance billing prohibition.  *Id.*  It stated that Martello's contention that

18   California's balance billing prohibition conflicts with the ACA because the ACA

19   legalized balance billing was unsupported by any provision of the ACA or federal

20   regulations (either interim or final) implementing the ACA.  *Id.* at 15-16; Ex. R.

21        The Superior Court's ruling on the second cause of action, which the Court of

22   Appeal embraced and agreed with, is final and on the merits for purposes of

23   collateral estoppel.  For purposes of issue preclusion, an issue may be submitted

24   and determined on demurrer.  *Barker v. Hull*, 191 Cal. App. 3d 221, 226 (1987);

25   Restatement Second of Judgments §27.  A judgment may be final as to part of an

26   action or claim.  Restatement (Second) of Judgments § 13, com. e (1982).  A

27   demurrer which is sustained for failure to state facts sufficient to constitute a cause

28   of action is a judgment on the merits. *Kanarek v. Bugliosi*, 108 Cal. App. 3d 327,

334 (1980).

A final judgment includes any prior adjudication of an issue that is sufficiently firm to be accorded preclusive effect. Restatement (Second) of Judgments § 13; *Border Business Park, Inc. v. City of San Diego,* 142 Cal. App. 4th 1538, 1564 (2006) [order sustaining demurrer]. A prior adjudication may be considered "sufficiently firm" based on the following factors: (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal. *Sandoval v. Superior Court,* 140 Cal. App. 3d 932, 936 (1983); Restatement (Second) of Judgments § 13, com. g.

Here, after appellate review, the order sustaining the demurrer to the second cause of action became final for purposes of issue preclusion and no further question could be raised concerning that cause of action. Finally, the parties are in privity. The privity requirement is met because Martello is the same party as in the former proceedings. Therefore, issue preclusion precludes relitigation in federal court of the identical issues adjudicated in the Superior Court and Court of Appeal.

### C.   Preclusive Effect of Judgment in DMHC Civil Action.

On appeal of the Judgment entered against her after a bench trial in the DMHC's civil action for violating the balance billing prohibition, Martello raised identical issues as in the instant case which the Court of Appeal adjudicated and rejected. RJN & Ex. T at 2. Martello argued that ERISA and the ACA preempted California's balance billing prohibition. *Id.* at 9. The Court of Appeal rejected her argument, asserting that the cases cited by Martello did not support her position. *Id.*

Martello also argued that the ACA allowed balance billing and, therefore, preempted the prohibition in *Prospect* in the emergency context. RJN & Ex. T at 9. The Court of Appeal rejected the argument, citing the federal final regulations implementing the ACA which essentially indicate that States may enact laws that prohibit balance billing. *Id.* The Court then concluded, "[i]n short, we find no

1   support for [Martello's] claim that California's prohibition against balance billing

2   in the emergency services context is preempted by federal law." *Id.* at 10.

3   Martello's subsequent Petition for Review to the California Supreme Court was

4   denied.  RJN & Ex. U.

5       One not a party to a prior suit may successfully assert collateral estoppel as a

6   defense.  Takahashi *v. Bd. of Educ.*, 202 Cal. App. 3d 1464, 1477 (1988).  The

7   privity requirement is met here because Martello is the same party as in the former

8   proceedings.  Therefore, issue preclusion precludes relitigation in federal court of

9   the identical issues adjudicated before the Superior Court and Court of Appeal.

10  **XII. PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS.**

11      **A.    Plaintiffs fail to State a Cognizable Claim Under 42 U.S.C.
12             Section 1983.**

13      42 USC §1983 permits a cause of action against a person acting under color of

14  state law who violates an individual's constitutional or other federally-protected

15  rights.  The statute is not a source of substantive rights.  *Graham v. Conner*, 490

16  U.S. 386, 393 (1989).  It is a method for vindicating federal rights conferred

17  elsewhere.  (*Ibid.*)  Generally, actions under § 1983 may not be brought against the

18  state or its officials sued in their official capacity.  *Will*, 491 U.S. at 71.  However,

19  under the *Ex Parte Young* doctrine, a plaintiff may bring a suit in federal court

20  against a state officer acting in violation of federal law for prospective injunctive or

21  declaratory relief.  *Ex Parte Young*, 209 U.S. at 159-160.

22      To state a constitutional claim under § 1983, "a plaintiff must allege that (1)

23  he or she was deprived of a right secured by the Constitution or federal law; and (2)

24  the defendant acted 'under color of state authority' in depriving the plaintiff of this

25  right." *Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir. 2000).

26      Here, the Board has not taken any disciplinary action against Marcus or Way.

27  Thus, the Board has not acted under color of state law and has not violated any of

28  their constitutional or federal rights.  Martello has not stated a claim under § 1983

because she has not stated cognizable claims for relief under constitutional or
federal law.

### 1. Plaintiffs Fail to State a Cognizable Claim Under the First Amendment.

Plaintiffs contend that balance billing is protected under the First
Amendment as commercial speech from unwarranted governmental regulation.
SAC ¶ 156. Martello alleges that her balance billing involves both written and
verbal expression, that is lawful and not misleading, as well as the use of the United
States Post Office, all of which are rights protected under the First Amendment.
SAC ¶ 157. Plaintiffs further contend that California's balance billing ban does not
directly advance a substantial governmental interest and is at direct odds with
California's governmental interests and the intent of the California Legislature.
SAC ¶ 158. As a matter of law, balance billing is not commercial speech.

Commercial expression is defined by the Supreme Court as "serv[ing] the
economic interest of the speaker, but also assists consumers and furthers the
societal interest in the fullest possible dissemination of information." *Cent. Hudson
Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561-562
(1980). The majority of cases dealing with the subject of commercial expression
involve advertisements. Less protection is afforded to commercial speech and the
protection that is provided depends on the nature of the expression and the
government interests served by its regulation. *Id.* at 563. The *Central Hudson*
court developed a four prong test in analyzing commercial speech. For commercial
speech to be protected by the First Amendment, (1) it must concern lawful activity
and not be misleading and (2) the asserted governmental interest must be
substantial. If the first two prongs are answered affirmatively, the next two prongs
are that (3) the regulation must directly advance the governmental interest asserted,
and (4) is the regulation not more extensive than is necessary to serve that
governmental interest. *Id.* at 566.

Balance billing is not commercial speech. It does not qualify as commercial speech as defined in the *Central Hudson* case. Although it serves the economic interest of the speaker, namely Plaintiffs requesting money from their patients, it does not assist consumers or furthers societal interest through the dissemination of information. It is neither an advertisement nor proposes a commercial transaction. It is simply a bill to a patient for the balance of medical treatment not paid for by an insurance company. It is unnecessary to further discuss the four prongs laid out in the *Central Hudson* case because, as a matter of law, balance billing does not qualify as commercial speech.

### 2. Plaintiffs Fails to State a Cognizable Claim for Violation of Due Process.

Martello contends the administrative accusation against her violates her Due Process rights because it enjoins her from balance billing patients. SAC ¶ 165. Plaintiffs allege the DMHC orders and the Board's accusation are publicly displayed on government websites which harms their names and reputations. SAC ¶¶ 166-168. Plaintiffs also argue that they have a constitutionally protected liberty interest in their names and reputations through the Fourteenth Amendment. SAC ¶ 166. Plaintiffs misstate the law.

Under California Business and Professions Code sections 803.1 and 2027, the Board discloses information on the "current status" of the license of current and former licensees to the public via its website, such as enforcement actions taken against a licensee. Under California Business and Professions Code section 2001.1, protection of the public is the Board's highest priority, and the publication of enforcement actions against a licensee is necessary to achieving that goal.

In terms of Procedural Due Process, the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), stated "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or

property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane,* 339 U.S. at 313; see also *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requiste of due process of law is the opportunity to be heard.") and *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965) ("It is an opportunity which must be granted at a meaningful time and in a meaningful manner.").

Martello was afforded an opportunity to be heard at a meaningful time and in a meaningful manner during an administrative hearing when charges were brought against her by the Board. She had a meaningful and adequate opportunity to refute the charges and clear her name by presenting witnesses, evidence, testimony, and argument before an administrative law judge. The Board adopted a proposed decision from the administrative law judge that ruled against her. Martello requested a stay of the Board's decision to file a petition for reconsideration with the Board, which was granted. The Board did not grant the petition and the decision became final by operation of law. Martello served her disciplinary probation and successfully completed it.

Martello was given notice and the opportunity to be heard during the administrative process. Procedural Due Process was satisfied in regards to the Board's 2013 disciplinary action against her for balance billing.

In terms of Substantive Due Process, Plaintiffs have failed to assert a recognized right or benefit that should be protected by the Due Process Clause of the Fourteenth Amendment. Martello asserts that the Board's accusation was based on the "falsehood that the 2008 DMHC balance billing regulation is governing law" and that it is an ongoing and continuous violation of Martello's Due Process rights since the Board has permanently enjoined her from balance billing patients. SAC ¶ 165. Martello misstates the law and fails to assert a cognizable right or benefit meriting protection under the Fourteenth Amendment.

As discussed below, as a matter of law, the 2008 DMHC balance billing

1    regulation is governing law and is not preempted by the ACA, ERISA, or any other

2    federal law.  Balance billing is not a right recognized by any federal or state law,

3    thus the publication of the enforcement actions against Plaintiffs do not give rise to

4    a cause of action against Defendant Lally.

5      Plaintiffs contend that they have a constitutionally protected liberty interest

6    in their names and reputations through the Fourteenth Amendment.  While the

7    Constitution does provide some protections for one's name and reputation under

8    certain circumstances, Plaintiffs' circumstances in the current case do not allow for

9    those protections to be applied here.

10      The Supreme Court in *Paul v. Davis,* 424 U.S. 693 (1976), specifically stated

11    one's reputation is not protected under the Fourteenth Amendment unless it is

12    connected to a more tangible interest, such as employment.  *Id.* at p. 701.  Case law

13    does not recognize name or reputation alone as a liberty or property right under the

14    Due Process Clause of the Fourteenth Amendment.  The *Paul* court stated there

15    must be some tangible interest, such as employment, linked to one's reputation in

16    order for the Substantive Due Process protections of the Fourteenth Amendment to

17    be invoked.

18      Here, Plaintiffs fail to assert any cognizable right.  Balance billing is not a

19    right under federal or state law as argued above.  Since balance billing is not a right,

20    Plaintiffs do not have a claim under the Due Process Clause in protecting their

21    name or reputation.  A person's name or reputation alone is not recognized as right

22    or benefit meriting protection under the Due Process Clause as stated by the *Paul*

23    court.  Although Martello has property interest in her medical license, it is not in

24    jeopardy by her inability to balance bill.  The Board is not depriving Martello of her

25    license without Due Process.  Martello was afforded Due Process through the

26    administrative process when her license was disciplined back in 2013.

27      **B.** **Martello Fails to State a Cognizable Claim under the ACA.**

28    Martello alleges that she has a private right of action under Section 1557 of the

1  ACA because Defendant Lally singled her out for a case of first impression as the

2  only physician in the state of California to be prosecuted for balance billing as a

3  violation of the Medical Practice Act. SAC ¶ 181. Section 1557 states in relevant

4  part: "an individual shall not . . . be excluded from participation in, be denied the

5  benefits of, or be subjected to discrimination under, any health program or activity,

6  any part of which is receiving Federal financial assistance, including credits,

7  subsidies, or contracts of insurance." 42 U.S.C. § 18116(a). The definition of

8  "covered entity" and "health program or activity" can be found in 45 C.F.R. § 92.4.

9      Even if Martello's allegation that Section 1557 of the ACA creates a private

10  right of action is true, she fails to state a claim because (1) the Board is not a

11  covered entity, as it is not a "health program or activity," as defined in Section

12  1557. The Board does not administer or provide health programs or activities and it

13  does not does not assist individuals in obtaining health-related services or insurance

14  coverage; (2) the Board did not exclude Martello, deny her benefits, or subject her

15  to discrimination under a "health program or activity," as defined in Section 1557.

16  Balance billing is not a "benefit" within the meaning of Section 1557 (SAC ¶ 178);

17  (3) Martello fails to allege that the Board specifically receives federal financial

18  assistance, so as to make Section 1557 applicable to the Board (see SAC ¶¶ 29,

19  176); (4) Martello fails to allege that any discrimination prohibited under Section

20  1557 by the Board was on the basis of a protected category (SAC ¶ 181); and (5)

21  Martello does not allege that discrimination was intentional.

22  **C.   Martello Fails to Allege a Cognizable Claim for Denial of
       Benefits under ERISA Section 502.**

23

24      Martello's ERISA claim is under § 502, 29 U.S.C. § 1132(a)(1)(B), which

25  authorizes a civil action to recover benefits and to enforce and clarify rights under

26  an ERISA plan. SAC ¶¶ 183, 185. Martello must allege (1) the existence of an

27  ERISA plan, and must identify (2) the provisions under the plan that entitle her to

28  benefits. *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 992 (N.D. Cal.

1    2018).  First, Defendant Lally is not a proper defendant because she has not

2    engaged in any alleged act or practice that violates ERISA § 502.  *Cyr v. Reliance*

3    *Standard Life Ins., Co.*, 642 F.3d 1202, 1205-1206 (9th Cir. 2011).  "[P]roper

4    defendants under § 1132(a)(1)(B) for improper denial of benefits at least include

5    ERISA plans, formally designated plan administrators, insurers or other entities

6    responsible for payment of benefits, and de facto plan administrators that

7    improperly deny or cause improper denial of benefits.  Suits under § 1132(a)(1)(B)

8    to recover benefits may be brought 'against the plan as an entity and against the

9    fiduciary of the plan.'"  *Spinedex Physical Therapy USA Inc. v. United Healthcare*

10   *of Arizona, Inc.*, 770 F.3d 1282, 1297-1298 (9th Cir. 2014), citing *Hall v. Lhaco,*

11   *Inc.*, 140 F.3d 1190, 1194 (8th Cir.1998).  Defendant Lally has absolutely no

12   responsibility for or connection to the underpayment or denial of benefits under an

13   ERISA plan.

14        Second, Martello has not identified the provisions of the alleged self-funded

15   plans that entitle her to the benefits she seeks and under which she allegedly

16   received an assignment of rights.  SAC ¶ 184.  Third, contrary to Martello's

17   contention, the plans at issue in the disciplinary action were HMO/fully funded

18   plans, not self-funded plans.  SAC ¶¶ 184-185.  The Administrative Law Judge and

19   Superior Court rejected the identical claim and made explicit findings against her

20   that the plans were fully funded plans.  RJN & Exs. A at 19, ¶ 85 and 24 at ¶¶ 5E-

21   5F; D at 16, 21 n. 13; H at 4.  The Superior Court stated that these "insurers were

22   all HMOs, and none were self-funded and thereby exempt from Knox-Keene under

23   ERISA."  RJN & Exs. D at 16 (citing the administrative record).  The Superior

24   Court's findings are binding on Martello.

25        Fourth, at issue is not the underpayment or improper denial of benefits under

26   an ERISA plan.  ERISA does not even contain a provision providing the right to

27   balance bill.  What Martello is contesting is the inability to go after patients to

28   recover the balance of her bills <u>after</u> full payment from an alleged ERISA plan.

30

1   Martello's alleged right to balance billing is separate and independent from a right

2   to receive benefits under an alleged ERISA plan. *New York State Conference of*

3   *Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650–651

4   (1995) ("The federal statute does not go about protecting plan participants and their

5   beneficiaries by requiring employers to provide any given set of minimum benefits,

6   but instead controls the administration of benefit plans, see § 2, 29 U.S.C. §

7   1001(b). . . .)  Finally, as will be shown below, the ACA did not legalize balance

8   billing and, thus, it does not apply to ERISA by way of § 715.  SAC ¶ 182.

### D.   Plaintiffs Fail to State a Cognizable Claim Under the Supremacy Clause.

11   The Supremacy Clause does not create rights that are enforceable under §

12   1983.  *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989).

13   The Supremacy Clause secures "federal rights by according them priority whenever

14   they come in conflict with state law." *Chapman v. Houston Welfare Rights*

15   *Organization*, 441 U.S. 600, 613 (1979).  The Supremacy Clause does not provide a

16   private right of action and is not the source of any federal rights.  *Armstrong v.*

17   *Exceptional Child Center, Inc.*, 575 U.S. 320, 324-325 (2015).  A federal statute

18   must provide a private right of action or permit suit in equity.  *Id* at. 326-328. Since

19   Plaintiffs' preemption theories fail as a matter of law, they do not have a viable

20   claim to invalidate California's balance billing prohibition under the Supremacy

21   Clause.  SAC ¶ 141, 144, 212.

### E.   Plaintiffs fail to State a Cognizable Claim for Declaratory Relief.

23   A party seeking declaratory relief must show (1) an actual controversy (2)

24   regarding a matter within federal court subject matter jurisdiction. *MedImmune,*

25   *Inc. v. Genentech, Inc.*, 549 U.S. 118, 127-128 (2007).  Claims for declaratory relief

26   based on a substantive cause of action are subject to the statute of limitations

27   applicable to that action. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688-

28

1   689 (9th Cir. 1993).

2       With respect to Martello, her request for declaratory relief, which is based on

3   the substantive causes of action, is barred by the applicable statute of limitations.

4   With respect to all plaintiffs, the Court lacks subject matter jurisdiction.  In

5   addition, there is no actual controversy because the ACA and ERISA do not

6   preempt California's balance billing prohibition as a matter of law.  They also fail

7   to state cognizable claims.  Under substantive law, no liability exists.

8   **XIII. PLAINTIFFS' PREEMPTION THEORY FAILS AS A MATTER OF LAW.**

9       Plaintiffs allege that the ACA, the ACA's regulations, and ERISA operate to

10  legalize balance billing in California and preempt California's balance billing

11  prohibition.  SAC ¶¶ 1-2, 142.  Plaintiffs are incorrect as a matter of law.  Federal

12  preemption may be express or implied.  *Montalvo v. Spirit Airlines*, 508 F.3d 464,

13  470 (9th Cir. 2007).  Express preemption occurs when congressional intent to

14  preempt is "explicitly stated in the statute's language or implicitly contained in its

15  structure and purpose."  *Id.*; see, e.g., *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d

16  665, 668 (9th Cir. 2003).

17      In turn, there are two types of implied preemption: conflict preemption and

18  field preemption.  *Montalvo*, 508 F.3d at 470.  Conflict preemption occurs "when a

19  state law actually conflicts with federal law or when a state law stands as an

20  obstacle to the accomplishment and execution of the full purposes and objectives of

21  Congress in enacting the federal law."  *Id.*; *Cal. Coastal Comm'n v. Granite Rock

22  Co.*, 480 U.S. 572, 581 (1987).  Field preemption occurs "when Congress indicates

23  in some manner an intent to occupy a given field to the exclusion of state law."

24  *Montalvo*, 508 F.3d at 470.

25  **A.  Initial Presumption as to the ACA.**

26      There is a rebuttable presumption against preemption by the ACA.  Where

27  Congress has created legislation in a field traditionally occupied by the states,

28  courts "start with the assumption that the historic police powers of the States were

1   not to be superseded by the Federal Act unless that was the clear and manifest

2   purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

3   There is a presumption that Congress does not generally intend to displace state

4   law. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). The California laws at

5   issue address a subject traditionally regulated by the states: public health and the

6   cost of medical care. *Hillsborough County v. Automated Medical Laboratories,*

7   *Inc.*, 471 U.S. 707, 719 (1985). By enacting the ACA, Congress legislated in the

8   field of public health, which is traditionally regulated by the states.

9       **B.    The ACA does not preempt the Balance Billing Prohibition.**

10      There is no express preemption, as alleged by Plaintiffs. SAC ¶¶ 135, 147. 42

11  U.S.C section 18041(d) provides in pertinent part: "(d) No interference with State

12  regulatory authority[.] Nothing in this title shall be construed to preempt any State

13  law that does not prevent the application of the provisions of this title." In addition,

14  the interim final regulations implementing the ACA explain in pertinent part: ". . .

15  State laws that impose on health insurance issuers requirements that are stricter than

16  the requirements imposed by the Affordable Care Act will not be superseded by the

17  Affordable Care Act." *Patient Protection and Affordable Care Act: Preexisting*

18  *Condition Exclusions, Lifetime and Annual Limits, Rescissions, and Patient*

19  *Protections*, 75 Fed.Reg. 37188-01, 37189 (June 28, 2010). The final regulations

20  implementing the ACA explain that the regulations are designed to reduce the

21  potential amount of balance billing and States are free to prohibit balance billing.

22  Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime

23  and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient

24  Protections Under the Affordable Care Act, 80 Fed.Reg. 72192, 72213 (Nov. 18,

25  2015) (to be codified at 26 C.F.R. 54.9815-2719A, 29 C.F.R. 2590.715-2719A, &

26  45 C.F.R. 147.138) (emphasis added). The final regulations became effective on

27  January 19, 2016. Therefore, Plaintiffs' claim that the ACA legalized balance

28  billing is wrong as a matter of law. In addition, there is no conflict between

33

1    California's balance billing prohibition and the ACA.

2    **C.   ERISA does not Preempt the Balance Billing Prohibition.**

3    Plaintiffs allege that the balance billing prohibition is preempted by ERISA, as

4    amended, "with respect to self-insured employee welfare benefit plans." SAC ¶

5    142. But the plans at issue in the case are fully funded plans. The Knox-Keene Act

6    regulates insured plans; it does not regulate self-insured plans. It, therefore, falls

7    within the insurance saving clause of ERISA and is not preempted by ERISA.

8    ERISA applies to employee benefit plans. 29 U.S.C. §§ 1001 et seq.;

9    *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985). Health

10   insurance or health care service plans covering an employee group may constitute

11   an employee benefit plan. 29 U.S.C. § 1002(1); *Metropolitan Life Ins. Co.,* 471

12   U.S. at 732. "Plans may self-insure or they may purchase insurance for their

13   participants. Plans that purchase insurance--so-called "insured plans"--are directly

14   affected by state laws that regulate the insurance industry." 471 U.S. at 732.

15   There are three provisions of ERISA that address preemption: the ERISA

16   preemption clause, saving clause, and deemer clause. *FMC Corp. v. Holliday*, 498

17   U.S. 52, 57-58 (1990); 29 U.S.C. §§ 1144(a) (pre-emption clause), 1144(b)(2)(A)

18   (saving clause), 1144(b)(2)(B) (deemer clause). The preemption clause "establishes

19   as an area of federal concern the subject of every state law that 'relate[s] to' an

20   employee benefit plan governed by ERISA." *FMC Corp.,* 498 U.S. at 58.

21   In *FMC v. Holliday*, 498 U.S. 52 (1990), the United States Supreme Court

22   clarified the two exceptions to the preemption clause of ERISA: (1) The "saving

23   clause," which carves out an exception to the preemption rule and returns to the

24   States the power to enforce state laws that regulate insurance (i.e., insured plans),

25   and (2) The "deemer clause, which excludes from the saving clause self-funded

26   plans because they relate to an employee benefit plan, but do not regulate insurance

27   (i.e., uninsured plans). *Id.* at 60-61. Thus, the deemer clause protects self-funded

28   plans from all state regulation. *Id.* at 61.

1   Because the Knox-Keene Act regulates insured plans, it falls within the scope

2   of ERISA's saving clause.  California Health and Safety Code section 1345(f)(1)

3   defines a health service plan within the jurisdiction of the DMHC.  The deemer

4   clause does not apply because the Knox-Keene Act does not regulate self-funded

5   plans.  Thus, ERISA does not preempt California's balance billing prohibition.

6   **XIV.  PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND.**

7   A court may dismiss a complaint without granting leave to amend only if it

8   appears with certainty that the plaintiff cannot state a claim and any amendment

9   would be futile.  Fed. R. Civ. P. Rule 15(a), stating that leave to amend "shall be

10  freely given when justice so requires;" *DeSoto v. Yellow Freight Systems, Inc.,* 957

11  F.2d 655, 658 (9th Cir. 1992); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*

12  806 F.2d 1393, 1401 (9th Cir. 1986) (stating, "leave to amend should be granted

13  unless the court determines that the allegation of other facts consistent with the

14  challenged pleading could not possibly cure the deficiency.") (citation omitted).

15  Here, based on the inability to state a valid claim, Plaintiffs will not be able

16  to successfully plead a claim for relief.  Leave to amend should not be granted.

17  **CONCLUSION**

18  Accordingly, Defendant Lally respectfully requests that the Court grant the

19  motion to dismiss the SAC in its entirety with prejudice.

20  Dated: March 18, 2019                    Respectfully submitted,

21                                           XAVIER BECERRA
                                             Attorney General of California
22                                           ROBERT MCKIM BELL
                                             Supervising Deputy Attorney General
23                                           JONATHAN NGUYEN
                                             Deputy Attorney General
24                                           /s/**Claudia Ramirez**
                                             CLAUDIA RAMIREZ
25                                           Deputy Attorney General
                                             *Christine J. Lally, Interim Executive Director*
26                                           *of the Medical Board of California*

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Daniel Marcus, M.D., et al. v.**      No.    **2:19-cv-08057-CJC-AGR**
             **Shelley Rouillard, in her official**
             **capacity as Director of the**
             **Department of Managed Health**
             **Care, et al.**

I hereby certify that on <u>March 18, 2020,</u> I electronically filed the following documents with the
Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be
accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on <u>March 18, 2020</u>, at Los Angeles,
California.

|  |  |
|---|---|
| Deborah Ruiz | _(signature)_ |
| Declarant | Signature |

LA2019505653